[No. 14166. *En Banc.* January 19, 1918.]

## T. T. BARBOUR, *Appellant*, v. ROBERT T. HODGE, *as Sheriff et al., Respondents*, J. R. LANE, *Appellant.*[1]

BAILMENT—LIEN—PRIORITIES—CONDITIONAL SALES. Although the vendee in a conditional sales contract of an automobile was never in possession of the car, which was left in the possession of the vendor for the purpose of contracting for rebuilding it as per agreement, the vendor was authorized to contract for the work so as to create a lien upon it superior to the title of the vendee, under Rem. Code, § 1156, relating to such liens and providing that the person in possession under an agreement to purchase shall be deemed the owner; and this whether the vendor be regarded as the person in actual possession or as agent of the vendee who was in constructive possession.

SAME — LIEN — NOTICE — FILING — FORECLOSURE — JURISDICTION —VENUE. Where a motor truck was kept in K. county while work was being done upon it until its delivery to the purchaser, who removed it to S. county, and within six days a lien notice for the work was filed in good faith in K. county, as the county wherein it was kept, under Rem. Code, § 1155, and it was actually seized in K. county a few days later in proceedings to foreclose the lien, and the owner removed the foreclosure proceedings to the superior court for K. county, after which the lien claimant filed a notice of lien in S. county, the lien notices are sufficient and the superior court of

[1]Reported in 170 Pac. 115.

K. county had jurisdiction of the lien foreclosure, under Rem. Code, § 1157, authorizing foreclosure in the county "in which the property is situated," where there was no demand for a removal of the trial to S. county; in view of Rem. Code, §§ 204, 208, providing that actions involving possession or title to personal property may be commenced in the county wherein it is situated, and if not commenced in the proper county, may be tried therein unless demand is made that the trial be had in the proper county.

SALES—CONDITIONAL SALES—TITLE AND PAYMENT OF PRICE. As between the parties, the purchase price of a truck was fully paid and the title passed, where the vendor in a conditional sales contract was, at the time of the delivery of the truck, indebted to the vendee for equipment supplied by the vendee, and for monthly salary agreed to be applied on the purchase price, and had created a lien against the truck which the vendee was obligated to discharge to protect his interests, the sums amounting in the aggregate to more than the balance due on the purchase price.

SALES—CONDITIONAL SALES—INDEBTEDNESS—ELECTION—RIGHTS OF ASSIGNEE OF VENDOR—FAILURE TO RECORD ASSIGNMENT. Since a conditional sales contract does not create a lien as security for the payment of a debt, nor create the relation of debtor and creditor, the vendor's assignee, by claiming a forfeiture and seeking recovery of the property, makes an irrevocable election acknowledging that there was no debt, and cannot claim as an innocent purchaser of the contract of sale or notes given to evidence the purchase price; and having failed to record his assignment as required by Rem. Code, § 5291, or give notice thereof, it was void at to the vendee, who without notice paid the full purchase price to the vendor after the assignment.

Cross-appeals from a judgment of the superior court for King county, Ronald, J., entered November 15, 1916, upon findings in favor of the defendant lien claimant, in an action to determine the validity of conflicting claims to property held under a conditional sale contract, tried to the court. Affirmed.

*J. W. Russell*, for appellant Barbour.

*E. L. Skeel* and *J. J. Geary*, for appellant Lane.

*S. G. Climenson*, for respondent Hoffman Company.

PARKER, J.—This is a controversy over the title to an automobile delivery truck arising out of a conditional sale

contract, and also a controversy over a claimed lien upon the truck. The plaintiff, Barbour, claims title to the truck under a conditional sale contract by which he purchased it from the defendant Krandall, claiming to have paid the entire purchase price. The defendant Lane claims title to the truck as assignee of Krandall, claiming a forfeiture of Barbour's rights under the conditional sale contract because of his failure to pay the deferred purchase price installments as agreed upon. The defendant Hoffman Company claims a lien upon the truck for the construction of a body upon it at the instance of the defendant Krandall while it remained in his possession. Trial in the superior court for King county resulted in findings and judgment decreeing foreclosure of the lien of the Hoffman Company as against the claim of title made by both Barbour and Lane, and decreeing Barbour to be the owner of the truck as against Lane's claim of title thereto. Barbour has appealed from so much of the judgment as decrees foreclosure of the lien of the Hoffman Company. Lane has appealed from so much of the judgment as decrees Barbour to be the owner of the truck. Lane does not by his appeal challenge the correctness of the judgment in so far as it awards foreclosure of the lien to the Hoffman Company.

On November 30, 1915, Krandall was the owner of a Stearns automobile touring car which was then kept by him at his garage and repair shop in Seattle. It was an old car in a bad state of repair. On that day Krandall entered into a contract for the sale of this car to Barbour. It was a conditional sale contract in the usual form, reserving the title in Krandall until payment of the entire agreed purchase price, $350 of which was paid at the time of the signing of the contract, and the balance of the $450 was to be paid in monthly installments of $35 each. On December 4, 1915, this contract was filed of record in the office of the auditor of Snohomish county, that being the county of Bar-

bour's residence. The machine was then an ordinary touring car, but it was described in the sale contract as "One Stearns 1500 lb. delivery auto, 1909 model, car No. 1123." While the contract recited that "possession of said property was taken by said vendee on the 30th day of November, 1915," the possession of the machine was, in fact, not taken by Barbour thereunder until March 4, 1916, during all of which time it remained in the possession of Krandall, except for a short time when it was by him placed in possession of the Hoffman Company at its shop in Seattle when that company was, at Krandall's instance, constructing a delivery body upon it. The sale contract though referring to the machine as a "delivery auto," concededly was made with reference to this touring car, but contained no language touching the matter of changing it into a delivery truck. The trial court found from evidence introduced upon the trial:

"That, at the time of the making of said conditional sales contract, the said Krandall was operating a garage in the city of Seattle, King county, Washington, and contemporaneously with the making of said conditional sales contract, and as a part of the agreement therefor, he orally agreed with said Barbour that he would rebuild said automobile into a delivery truck, as called for by said contract, and that he would put new tires upon it, and would furnish it with a kit of repair tools. That at that time the tires on said automobile were worn out and could not be used in operating said automobile, and there were no repair tools upon it."

This finding is well supported by the evidence. Soon after the making of the sale contract, Krandall began rebuilding the car at his shop, but having no facilities for constructing the delivery body as contemplated, in January, 1916, removed it to the shop of the Hoffman Company and caused that company to construct a delivery body upon it. The body was completed to the satisfaction of Barbour by the Hoffman Company about February 16, 1916, was of the reasonable value of $140, and enhanced the value of the car to that extent. The Hoffman Company had no knowledge

that any one other than Krandall had any interest in the car. Indeed, they were informed by Krandall that he was having it rebuilt with a view of making a sale of it, plainly leading that company to believe that he was the owner of it. The car being returned to Krandall by the Hoffman Company with the body completed, it was, by Krandall, delivered for the first time to Barbour on the 4th day of March, 1916, and soon thereafter Barbour began to use it in hauling goods for hire between Seattle, in King county, and Edmonds, in Snohomish county, keeping it at his home in Edmonds during the nighttime.

On March 10, 1916, the Hoffman Company, not being paid for its work upon the car, filed in the office of the auditor of King county notice of its claim of lien thereon, under Rem. Code, § 1155, to secure payment of the $140 due for the construction of the delivery body. On March 21, 1916, the Hoffman Company delivered to Hodge, as sheriff of King county, a duly certified copy of its lien notice as filed in that county, and caused Hodge to seize the car in Seattle with a view to selling the same in satisfaction of its lien claim under Rem. Code, § 1157, authorizing such sale as in the case of the summary sale of personal property to satisfy chattel mortgage liens as provided by Rem. Code, § 1104 *et seq.* On March 28, 1916, Barbour commenced this action in the superior court for King county, removing the foreclosure of the Hoffman Company's lien to that court, making Krandall as well as the sheriff and the Hoffman Company defendants therein, claiming the lien of the Hoffman Company to be invalid, and claiming title to the car as against Krandall because of having made full payment of the purchase price to him under the conditional sale contract. On April 11, 1916, the Hoffman Company, having learned that Barbour, a resident of Snohomish county, had purchased the car from Krandall, filed its notice of lien claim in the office of the auditor of Snohomish county, as it

had previously filed notice of its lien claim in the office of the auditor of King county. On April 13, 1916, the Hoffman Company filed in this action its answer and cross-complaint, setting up the filing of its notice of lien claim in both King and Snohomish counties, and praying foreclosure of its lien so claimed.

On May 3, 1916, Lane came into the action and caused to be served upon counsel for both Barbour and the Hoffman Company his cross-complaint, claiming title to the car as assignee of Krandall, resting his claim upon the ground that Barbour had defaulted in making payments as agreed in the conditional sale contract and had, therefore, forfeited all right thereto. The controlling facts touching the respective rights of Lane and Barbour as between themselves may be summarized as follows: When the conditional sale contract was made between Barbour and Krandall, Barbour executed and delivered to Krandall promissory notes, negotiable in form, for each of the deferred installments to be paid as specified in the conditional sale contract, which contract, however, was silent as to the giving of such notes. We assume that these notes were not given with a view of thereby making payment of the several installments as they became due upon the contract so as to have the effect of vesting title to the car in Barbour as upon payment of all deferred installments; in any event, not until Krandall might so elect by treating the notes as such payment. On December 4, 1915, Krandall executed a written assignment transferring to Lane all his right, title and interest in and to the conditional sale contract, and all his right, title and interest in and to all moneys to become due thereon or upon the promissory notes given in connection therewith. This, of course, also had the effect of transferring to Lane, Krandall's reserved title in the car as between themselves. The notes were delivered to Lane, together with this assignment, each of them being indorsed in blank by Krandall. Barbour

had no notice, actual or constructive, of this assignment, or of the transfer of the notes by Krandall to Lane, until after March 4, 1916.

Touching the question of Barbour's having paid or being entitled to credits showing that Krandall had received the full purchase price prior to the 4th day of March, 1916, the trial court found in substance as follows: When Krandall finally delivered the truck to Barbour on March 4, 1916, he had failed to put new tires upon it as agreed by him. Barbour was, therefore, compelled to equip it with tires at a cost of $164. From the first day of December, 1915, to the 4th day of March, 1916, Barbour was employed by defendant Krandall at a salary of $100 per month, Krandall agreeing to apply the salary of Barbour, less what he drew for living expenses, upon the amount remaining unpaid on the conditional sale contract. By reason of this employment and retaining of salary, Barbour was entitled to a credit upon the unpaid purchase price of the car amounting to $168.54. Barbour was also entitled to have deducted from the original purchase price $140, the lien claim of the Hoffman Company, which he was compelled to assume because of Krandall's neglect. So that, on the 4th day of March, 1916, at which time Barbour had no notice of the assignment to Lane, Krandall was obligated to Barbour in the amount of $472.64, which it will be noticed exceeds the entire $450 deferred installments of the purchase price under the conditional sale contract.

We first notice the contentions made by counsel for appellant, Barbour, that the Hoffman Company had no enforcible lien upon the truck for the construction of the delivery body thereon. It is argued in that behalf that Barbour came into possession of the car on November 30, 1915, under the conditional sale contract before the Hoffman Company constructed the delivery body upon it at the instance of Krandall, and that, therefore, Krandall had no authority to make a contract with that company which would result in a lien

in its favor as against Barbour. This argument is rested upon the statement in the sale contract that "the possession of said property was taken by the said vendee on the 30th day of November, 1915;" also upon § 1156, Rem. Code, relating to chattel liens, reading as follows:

"Every person who is in possession of a chattel, under an agreement for the purchase thereof, whether the title thereto be in him, or his vendor, shall, for the purposes of this act, be deemed the owner thereof, and the lien of a person expending material, labor or skill thereon shall be superior to and preferred to the rights of the person holding the title thereto, or any lien thereon antedating the time of expenditure of the labor, skill or material thereon by a lien claimant, to the extent that such expenditure has enhanced the value of such chattel."

The theory of counsel seems to be that this contractual relationship between Barbour and Krandall resulted in Barbour's being in the constructive possession of the car from and after November 30, 1915, and therefore no one but he could make any contract with a third person looking to the doing of work upon the car so as to give a lien right therefor as against him. We think § 1156 means nothing more than that one having *actual possession* of a chattel under a conditional sale contract, the title remaining in his vendor, is to be regarded as the owner in so far as the lien rights of one performing work upon the chattel at his instance is concerned. Manifestly the purpose of the statute is only to protect such lien claimant from claims of title which might be made by the holder of the legal title upon the ground that he did not authorize the doing of work for which a lien might be claimed. It is plain from the evidence in this case that Barbour, the vendee under the conditional sale contract, was at no time in the actual possession of the car prior to March 4, 1916, when Krandall turned it over to him after the Hoffman Company had constructed the delivery body upon it. It seems equally plain that the car was left in the possession of Krandall by Barbour for the express purpose

of having him cause repairs to be made upon it to the extent
of practically rebuilding it, including the construction of a
delivery body upon it, Barbour knowing that the construc-
tion of the delivery body would have to be done at some shop
other than Krandall's for want of facilities therefor in Kran-
dall's shop.   Krandall was thus plainly authorized by Bar-
bour to cause the delivery body to be constructed upon the
car by someone else who might claim a lien therefor.   The
fact that Krandall had the legal title to, and also the actual
possession of, the car when he took it to the Hoffman Com-
pany and authorized that company to construct upon it a
delivery body, seems ample to support the Hoffman Com-
pany's lien in so far as Krandall's power to make a contract
with that company for the construction of a delivery body
upon the car is concerned.   Krandall's power to contract
with the Hoffman Company so as to effectually create a lien
right in that company as against Barbour seems equally
plain if we regard Krandall merely as the agent of Barbour,
since Krandall was doing only what it was agreed between
him and Barbour that he should do to the end that the car
be rebuilt into a delivery truck.

Further contention is made in appellant Barbour's behalf
that the Hoffman Company's claim of lien must fail for want
of filing and foreclosure in the proper county.   Our chattel
lien statute, referring to sections of Rem. Code, reads as
follows:

"Every person, firm or corporation who has expended
labor, skill or material on any chattel, at the request of its
owner, or authorized agent of the owner, shall have a lien
upon such chattels for the contract price for such expendi-
ture, or in the absence of such contract price, for the reason-
able worth of such expenditure, for a period of one year from
and after such expenditure, notwithstanding the fact that
such chattel be surrendered to the owner thereof . . ."
Id., § 1154.

"In order to make such lien effectual the lien claimant
shall within ninety days from the date of delivery of such

chattel to the owner file in the office of the auditor of *the county in which such chattel* is kept a lien notice, which notice shall state  . . ." Id., § 1155.

"The lien herein provided for may be enforced against the owner of and all persons having an interest in any such chattel by notice and sale in the same manner that a chattel mortgage is foreclosed, or by *decree of any court in. this state, exercising original equity. jurisdiction in the county wherein such chattel may be*"  . . .  Id., § 1157.

We have italicized portions of these provisions to be particularly noticed. We have seen that, on March 4, 1916, after the completion of the delivery body and the return of the truck by the Hoffman Company to Krandall in February, 1916, he delivered it to Barbour under the conditional sale contract; that, on March 28, 1916, Barbour commenced this action in the superior court for King county, removing the foreclosure proceedings to that court; that, on April 11, 1916, the Hoffman Company filed its notice of lien claim in Snohomish county; and that thereafter, on April 13, 1916, the Hoffman Company filed in this action its cross-complaint, setting up the filing of its notices of lien claim in both King and Snohomish counties, and praying foreclosure of its lien so claimed. The argument of counsel for Barbour is, in substance, that the filing of the lien claim in King county was of no effect, because at that time King county was not then "the county in which such chattel is kept," within the meaning of § 1155 above quoted. It might well be argued that the Hoffman Company then had the right to proceed upon the assumption that the truck was then kept in King county. It plainly was kept in King county by Krandall until March 4, 1916, when he delivered it to Barbour, and it seems from the evidence before us that the Hoffman Company was proceeding in good faith in filing its lien claim in King county on March 10, 1916, wherein it named Krandall as the owner of the truck and assumed that it was then being kept in King county. It was actually found by the sheriff and seized in King county a few days later at the instance

of the Hoffman Company. But whatever the right of Barbour may be to avoid the foreclosure in King county under the filing of the lien claim in that county, it seems to us that, in any event, the filing of the cross-complaint by the Hoffman Company seeking foreclosure was in effect a seeking of foreclosure under the filing of its lien claim in Snohomish county as well as under the filing of its notice of lien claim in King county, so unless it be held that the superior court for King county had no jurisdiction to entertain foreclosure under the Hoffman Company's cross-complaint, it seems plain that the foreclosure was effective in any event. Recurring to Rem. Code, § 1157, above quoted, we find that the foreclosure may be had "by decree of any court of this state exercising original equity jurisdiction in the county wherein such chattel may be." Plainly this was a foreclosure in the county where the truck actually was at the time of its seizure by the sheriff and at the time of the filing of the Hoffman Company's cross-complaint seeking foreclosure. In Rem. Code, § 204, relating to the venue of actions, we read:

"Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated; . . . All questions involving the rights to the possession or title to any specific article of personal property."

And in § 208, relating to the commencement of actions in the wrong county, we read:

"If the county in which the action is commenced is not the proper county for the trial thereof, the action may, notwithstanding, be tried therein, unless the defendant . . . demands that the trial be had in the proper county."

There is nothing in this record indicating that Barbour demanded that the foreclosure proceedings be transferred to Snohomish county for trial therein. We think the superior court for King county was not without jurisdiction. Of course, it did not err in not sending the foreclosure proceed-

ings to Snohomish county for trial, since no demand was made therefor.

We conclude that, in any view of the case, the foreclosure decree was valid and effective as against Barbour, even though it be necessary to rest it upon the filing of the lien claim in Snohomish county. In other words, the foreclosure of a chattel lien may be had in any county wherein "such chattel may be," using the language of § 1157 above quoted, or "in which the property is situated," using the language of § 1104, relating to the foreclosure of chattel mortgages. These provisions of the statute relating to the foreclosure of chattel liens and chattel mortgages we think mean that the foreclosure may be commenced in whatever county the property may be found when foreclosure is sought, even though the foreclosure may upon demand be transferred to another county for trial.

We now come to the question of who is entitled to be decreed the owner of the truck as between Barbour and Lane. We think it will appear as we proceed that Lane stood in the shoes of Krandall up to the time that Barbour had notice of the assignment of Krandall to Lane, and that he is bound by whatever valid defense Barbour could have made as against Krandall's claim of title to the truck at that time. By the findings of the trial court, which we deem well supported by the evidence, as already noticed, on March 4, Krandall was obligated to Barbour for wages, for the value of tires which he failed to furnish, and for the amount of Hoffman Company's lien upon the truck in an amount aggregating the balance due upon the purchase price. So that, were this a controversy between Barbour and Krandall, the original vendor and vendee, calling for a determination of their respective rights as of March 4, 1916, we think there would be no escaping the conclusion that Barbour's title and right of possession to the truck would be superior to that of Krandall. We note that it is apparent from the record that Krandall not only did not, but could not, pay the lien

of the Hoffman Company; so, of course, Barbour was obliged to assume and pay it in order to save his interest in the truck under the conditional sale contract. This, we think, was as effectual in perfecting his title to the truck as against Krandall as if he had actually paid to Krandall equal sums of money aggregating the amounts of the deferred payments as called for by the conditional sale contract. We conclude, therefore, that, as between Barbour and Krandall, the entire purchase price under the sale contract was in effect paid, and Barbour's title thereby perfected as against Krandall on March 4, 1916, at which time there was no assignment of Krandall's rights to Lane which in the least impaired Barbour's right to the benefit of these credits as against Krandall.

While the assignment by Krandall to Lane was executed on December 4, 1915, we think it is quite certain from the evidence, as the trial court found, that Barbour had no notice of any such assignment until after March 4, 1916, at which time, as we have seen, Barbour had become entitled, as against Krandall, to credits upon the balance of the purchase price in a sum sufficient to entirely pay the purchase price. So far as the rights of Barbour are concerned, there was in law no assignment until he had notice thereof, unless it be held that he was bound by such assignment by reason of some element of negotiability attending the rights of Krandall under the conditional sale contract, as counsel for Lane seem to argue. It is to be remembered that we are not here dealing with the rights of any of these parties as debtor and creditor. Lane is not claiming that Barbour is indebted to him, but he is seeking to be decreed the owner of the truck as assignee of Krandall, upon the ground that Barbour has forfeited his right thereto because of default in the payment of the purchase price under the conditional sale contract. Now it has become the settled law of this state, as it is generally held to be in other jurisdictions having conditional sale statutes like ours, that such contracts do not create a

lien as security for the payment of a debt, nor do they ordi-
narily create the relationship of debtor and creditor between
the contracting parties. The title remains in the vendor or
passes from him to the vendee accordingly as the conditions
of the sale contract are broken or fulfilled, except when the
title passes to the vendee upon the election of the vendor to
treat the unpaid portion of the purchase price as a debt, the
terms of the contract being such as to permit the vendor to
make such election. Such was the right of election of reme-
dies possessed by Krandall, and Lane, his assignee, under the
terms of the conditional sale contract, and also because of the
giving of the notes for the amount of the deferred install-
ments; but Lane, having elected to recover the truck upon
the theory that the title thereto remained in Krandall and
in him as Krandall's assignee, plainly the well settled law
makes such election irrevocable, and in effect an acknowledg-
ment that there was no debt owing from Barbour to him.
Had Lane sought recovery from Barbour upon the notes
given for the deferred installments of the purchase price,
instead of claiming title to the truck, he would then be in a
position to urge that he was protected as an innocent holder
of the notes, freed from such defense as Barbour might make
as against Krandall. But had he elected to so proceed, that
of itself would have vested title to the truck in Barbour, as
has become firmly established by our decisions: *Ramey v.
Smith*, 56 Wash. 604, 106 Pac. 160; *Winton Motor Carriage
Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac.
817, 37 L. R. A. (N. S.) 71; *Stewart & Holmes Drug Co. v.
Reed*, 74 Wash. 401, 133 Pac. 577; *Eilers Music House v.
Douglass*, 90 Wash. 683, 156 Pac. 937, L. R. A. 1916E 613.

We are quite clear that, because of Lane's election to seek
recovery of the truck from Barbour upon the theory that he
is now the owner thereof because of Barbour's default in the
payment of the purchase price, he has no right to invoke any
element of negotiability attending the rights of Krandall
under the conditional sale contract or the promissory notes

given therewith for the deferred installments upon the purchase price. The assignment viewed as a bill of sale transferring Krandall's title in the truck to Lane was void as to Barbour, the purchaser, for want of record under Rem. Code, § 5291, and for want of his actual notice thereof up until March 4, 1916, when the entire purchase price had in effect been paid by him to Krandall, the possession of the truck having been retained by Krandall. The assignment viewed as a transfer of Krandall's right to receive from Barbour the deferred installments upon the purchase price was only the transfer of a nonnegotiable chose in action, even considering such right as a debt owing from Barbour to Krandall, against which all defenses existing in Barbour's favor on March 4, 1916, were preserved. The promissory notes may have passed from Krandall to Lane freed from such defenses, but this is not an action to recover upon the notes, nor can they now ever be recovered upon by Lane, since he has elected to claim title to the truck. It would only be in an action to recover upon the notes, which by itself would be an acknowledgment of Barbour's perfected title to the truck, that the element of negotiability invoked by counsel for Lane would be of any avail to him.

Other contentions made in appellant Lane's behalf have been given attention by us. We think they are without merit. We think the cause requires no further discussion.

The judgment is affirmed.

ALL CONCUR.