[Civ. No. 6278. First Appellate District, Division One.—December 21, 1928.]

JULIUS FRANKEL, Appellant, v. LOUIS ROSENFIELD, Respondent.

Herbert R. MacMillan for Appellant.

Bailie, Turner & Lake and Norman A. Bailie for Respondent.

KNIGHT, J.—Plaintiff, Julius Frankel, brought this action to recover a money judgment against defendant, as the alleged guarantor of a conditional sales contract, and to obtain an order directing a bank to deliver to the sheriff certain corporate stock belonging to defendant and claimed by plaintiff to have been deposited with said bank as collateral security, so that the same could be sold in liquidation of the judgment which plaintiff sought to obtain. Judgment was given in favor of defendant, and plaintiff appeals.

Assuming that the agreements of the parties hereinafter set forth legally established a contract of guaranty, the determinative issue in the case was and is whether, as defendant claims and as the trial court found, plaintiff released the original debtor, for if he did his act in so doing released the guarantor also, and it would follow that the judgment was properly entered in defendant's favor. The material facts surrounding the transaction, which are without substantial dispute, may be stated as follows: Plaintiff and his son, George Frankel, and a party named Miller whose rights are not here involved, were stockholders and directors in a corporation named the M. C. Hat and Cap Manufacturing Company, against which plaintiff held a promissory note for $5,000. Defendant, Louis Rosenfield, and one Fisher desired to purchase the interests of the Frankels in said company and to succeed them on the board of directors, and to that

end all parties entered into a written agreement dated October 20, 1923, which provided in part for the sale to defendant and Fisher of fifty shares of said stock of the par value of $100 each, standing in the name of George Frankel; and, continuing, said agreement read as follows: "Said Julius Frankel does hereby agree to cancel and surrender a certain note for the principal sum of Five Thousand Dollars ($5,000.00) of the M. C. Hat and Cap Manufacturing Company held by him, and, in lieu thereof, said Louis Rosenfield does hereby assign, transfer and set over to said Julius Frankel a certain contract made the 15th day of September, 1923, between said Louis Rosenfield and Luella Payne of Long Beach, California, for the sale of a certain apartment lease and furnishings on the west side of Rose Avenue of Long Beach, California, on which there is unpaid the sum of Forty-eight Hundred Seventy-five Dollars ($4875.00) and said Louis Rosenfield and said Stern Fisher do hereby agree to deposit with the California Bank (Hibernian Branch), at Fourth and Spring Streets, Los Angeles, California, stock of the M. C. Hat and Cap Manufacturing Company of the par value of Five Thousand Dollars ($5,000.00), transferred to them under this agreement, to be held by said bank in escrow until such time as said contract shall have been paid in full, at which time said fifty (50) shares of stock shall be returned to said Louis Rosenfield and said Stern Fisher." To make up the balance of the $5,000 defendant paid plaintiff $125 in cash.

Thereafter, in conformity with the foregoing clause of the agreement, and on October 29, 1923, two certificates of stock, indorsed in blank by defendant and Fisher, representing a total of fifty shares which then stood in their names, were deposited in said bank by defendant, accompanied by written instructions, signed by defendant, to "hold (said stock) in escrow an indefinite period or until there is handed you due notice that a certain contract in the amount of $4875.00 on a chattel between Luella Payne and Louis Rosenfield has been paid in full. Said notice will be handed you [by] Julius Frankel or his nominee, at some later date and you will be governed accordingly."

The Payne contract, assigned by defendant to plaintiff, was in its nature, as indicated, a conditional sales contract, wherein it was provided that title to the property agreed to

be sold should remain in the vendor until all monthly payments required to be made thereunder were completed. And all of the documents relating to this transaction were also placed in escrow, including the contract itself, the lease of the premises duly assigned to Mrs. Payne, and a bill of sale to her of the personal property; and with respect thereto it was in said contract provided that "upon the final payment of the last installment price to become due hereunder the escrow-holder shall deliver each of the instruments deposited herewith unto the said Luella Payne, but should she make default in any of the said terms or conditions and continue in such default for the period of ten days then the instruments deposited herewith shall be returned to the first party and all right of the second party shall thereupon terminate and end, and the first party shall retain all amounts that have theretofore been paid under this contract; first, for the use and occupation of said premises by the second party, and second, as liquidated damages for the breach of this contract, which said damages are hereby expressly agreed upon and liquidated in the amount that shall have been paid at the time that such breach occurred."

Mrs. Payne defaulted in making the July, 1924, monthly payment, and thereupon plaintiff, as vendor, exercised the remedy afforded by the terms of said contract by terminating the contract and withdrawing from escrow all papers and documents relating to the transaction, and within a few days thereafter took constructive possession of the property and entered into a new conditional sales contract with Mrs. Payne for the sale of the same property. It is evident, therefore, that the foregoing acts of the plaintiff operated to release Mrs. Payne as vendee from further obligation; and, since the guarantor's liability cannot in any contingency extend beyond that of the purchaser whose contract is guaranteed, plaintiff's acts operated also as a release of defendant as guarantor (*Glassell* v. *Coleman*, 94 Cal. 260 [29 Pac. 508]; *Merrill* v. *Merrill*, 103 Cal. 287 [35 Pac. 768, 37 Pac. 392]).

The evidence further shows, however, that notwithstanding the cancellation of said contract in the manner hereinabove set forth, plaintiff, two days prior to the date of the execution of the new agreement with Mrs. Payne, caused a purported sale of the property to be made at public auction, but with respect thereto the trial court held that said purported sale

was of no legal consequence, its finding thereon being as follows: That "plaintiff went through the form of selling the said property covered by said Luella Payne agreement and buying the same in himself for the sum of $1,000.00, and the court finds that said plaintiff under said contract at all times was and remained the owner of the furniture, fixtures, and lease mentioned in said contract, as well prior to, as after, said purported sale."

Appellant contends that said finding is not only unsupported by the evidence but that the trial court's conclusion as to the legal effect of said sale was erroneous, and in support of such contention calls attention to the law that where a vendee defaults in making payment under a conditional sales contract and the property is in the possession of the vendee, but title thereto remains in the vendor until he is fully paid therefor, the vendor is given an election of remedies. He may terminate the contract, retake the property and retain the money theretofore paid, or he may treat the transaction as a sale and sue for the balance of the purchase price. There is no disputing the foregoing rule, but, as said in *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353 [42 Pac. 435], "These remedies being inconsistent, the plaintiff could elect which he would pursue, but he could not have both." Here, as pointed out, plaintiff elected to and did pursue the remedy provided for in the contract by terminating the contract and releasing the vendee, and, obviously, thereafter he was not permitted to pursue the alternative remedy afforded by the law.

Furthermore, said purported sale was in no sense a judicial sale, no action of any kind having been instituted by plaintiff against Mrs. Payne or the defendant or the property; nor was such sale directly or indirectly authorized by any agreements of the parties. There is some suggestion made in the record about a chattel mortgage, or a "chattel mortgage contract," but the evidence clearly shows and the court found that no such document was ever executed by Mrs. Payne or involved in that transaction. Said sale was conducted by plaintiff's attorney, after plaintiff had caused notices thereof, signed by plaintiff, to be posted in three public places in Long Beach, in which notices it was stated, among other things, that Mrs. Payne, having defaulted in making the July, 1924, payment, plaintiff as vendor had

652

"elected to terminate the contract, and stand upon said default," etc. No bidders were present at said sale, however, and plaintiff bid in the property for $1,000, which amount he claimed to have credited on the Payne contract. It is evident from the foregoing facts and circumstances that said purported sale was fictitious in character and, therefore, as the trial court concluded, was of no legal value in determining the rights of the parties herein.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.