[S. F. No. 16600. In Bank.—Oct. 10, 1941.]

FAGEOL TRUCK & COACH CO. (a Corporation), Plaintiff and Respondent, v. PACIFIC INDEMNITY COMPANY (a Corporation), Defendant and Respondent; DETROIT FIRE AND MARINE INSURANCE COMPANY (a Corporation), Appellant.

734

White, Wakefield, Leighton & White, Dunn, White & Aiken and Carlos G. White for Appellant.

Fitzgerald, Abbott & Beardsley and Edward B. Kelly for Plaintiff and Respondent.

Bronson, Bronson & McKinnon, Kirke LaShelle and Harold R. McKinnon for Defendant and Respondent.

MOORE, J., *pro tem.*—This action was brought to recover a loss suffered by plaintiff by reason of damage to a ten-ton truck, which it had sold under a conditional sales contract to one Thomas on November 28, 1932. From a judgment

against both defendants and their two separate policies, both defendants appealed on separate records.

At all times herein mentioned plaintiff will be referred to as Fageol; defendant Pacific Indemnity Company will be referred to as Pacific; and the defendant Detroit Fire and Marine Insurance Company will be referred to as Detroit or appellant.

The vendee had paid only the sum of $2,000 on the purchase price of the truck, leaving a balance of $7871.76. At the time of the purchase the Pacific issued its fire and theft policy of automobile insurance naming Thomas as the insured. Attached to the policy was a rider designated as "vendors single interest coverage" or "V. S. I." endorsement. By its terms Pacific insured Fageol's interest in the truck against the peril of accidental collision or upset occurring while the truck "is in the possession of the purchaser, the purchaser has defaulted in payment thereon and the assured has re-possessed the automobile." One of the terms of the policy provided "This insurance shall be considered as excess insurance where any specific insurance exists in the name of or for the benefit of the assured on any of the property hereby insured and this insurance shall not apply nor contribute to the payment of any loss until any such specific insurance shall have been exhausted."

Thereafter, on December 20, 1932, with the consent of plaintiff, Thomas requested Detroit to issue to him a policy of insurance upon his truck in an amount not exceeding the cash value of the car at the time of loss which was to be payable as interest may appear to assured and the beneficiaries to be named in the endorsements. Pursuant to such request, a policy was issued. The risks covered by the policy included "collision or upset" but it contained a "deductible" clause whereby the loss was to be only that in excess of $250. By one rider attached to the policy, loss was made payable to Fageol for damage to the chassis; by another rider loss was to be payable to Isaacson Iron Works on account of loss to the trailer or its body or to the truck body. One clause provided: "No recovery shall be had under this policy if at the time a loss occurs there be any other insurance, whether such other insurance be valid and/or collectible or not, covering such loss, which would attach if this insurance had not been effected." Thomas accepted the policy at the time

of its issuance but deferred payment of the premium in the sum of $243.10.

On the 18th day of January, while Thomas was driving on a highway in the State of Washington, he collided with a guard rail whereby the truck was damaged in many parts. Its condition necessitated its removal for a long distance to the shop of Fageol in the city of Seattle.

Forty-seven days after the accident, with plaintiff's consent, Pacific paid the Detroit premium and at that time plaintiff, at Pacific's request, acquiesced in the issuance of the Detroit policy and the endorsement thereon on condition that it should not thereby be understood to release Pacific from liability under its "Single Interest Collision Coverage Endorsement." At the same time, however, Pacific agreed that, in event of loss and of Detroit's fixed liability, Pacific would pay plaintiff the $250 deductible under the Detroit policy and its rider. Failing in its efforts to collect the balance of the purchase price on the 20th day of February, 1933, plaintiff terminated Thomas' interest in the contract of purchase.

On the 19th day of January, 1933, oral notice of the loss was given to Detroit and a written estimate of the cost of repairs and the amount of the loss was, at its request, delivered to Detroit's agent January 25, 1933.

On March 16, within sixty days after the collision, verified proof of loss was served on Detroit. By such proof no fact with reference to the Pacific insurance was concealed from Detroit. Both policies contained a provision that in event of loss or damage, plaintiff should protect the property from further loss or damage and that any act done in furtherance of that end should be considered as done without prejudice and for the benefit of all concerned and that all reasonable expense thereby incurred should constitute a claim under the insurance. It was to protect the truck from further loss or damage and to preserve it that it was removed from the scene of the wreck to Seattle at an expense of $281.50. This expense in moving the truck from the highway to plaintiff's branch factory in Seattle, was expressly authorized and directed in advance by Detroit. Upon removal of the truck to Seattle, repairs were begun. The repairs were completed April 10, 1933. Detroit induced plaintiff to reduce the charges for making the repairs from

a larger sum to $2865.31, and approved that sum as the cost of the repairs and of hauling and towing the truck from the scene of the collision to Seattle.

After this action had been commenced Detroit paid Isaacson Iron Works its total loss in excess of $250.

Appellant has made much of its contention that Fageol never accepted the insurance. But the court properly found that Detroit never suggested the necessity for such acceptance; that it was not concerned with the acceptance of the policy by the assured or by the beneficiaries; that no restriction or condition was imposed by Detroit as to its acceptance; that Detroit was ignorant of the negotiations of Thomas for its policy; that it had no knowledge of the payment of the premium with moneys of Pacific until after this action was filed; but that no knowledge with reference to either fact had been concealed; that on the day of the collision, the broker at Seattle, who had on behalf of Thomas procured the Detroit policy, advised plaintiff of the loss; that the Detroit policy and its endorsement constituted and was at all times specific insurance, existing in the name and for the benefit of plaintiff; that the Pacific policy was excess insurance as to plaintiff and as to the Detroit policy; that by its terms the Pacific policy was not to apply or contribute to plaintiff's loss until the specific insurance of Detroit had been exhausted by plaintiff. Upon such findings the court adjudged that plaintiff was entitled to recover from both defendants the sum of $3146.81 with interest at 7 per cent per annum from April 28, 1933; but that Pacific should pay only such part of the judgment as might remain unpaid by Detroit and only in the event that plaintiff first exhaust the Detroit insurance without full satisfaction of the judgment.

■ At the outset, it will be understood that the determination of this case will be governed by the laws of Washington. The truck was sold to a citizen of Washington to be used there. By the contract of purchase, the venue of any legal proceedings brought by the vendor might be laid in any county of that state. The truck was not to be removed therefrom without Fageol's consent. The Detroit policy was executed in Washington whose law by its terms should control. (32 C. J. 979, 980, 981, sec. 10; 55 C. J. 1208, 1209, sec. 1192.)

*Fageol was insured under the Detroit policy.*

■ Detroit assigns as error the insufficiency of the evidence to support the decision that Detroit insured Fageol as well as Thomas. This claim is without merit. Thomas, as purchaser of the truck and as debtor to Fageol, was free to contract for insurance against not only his own loss but that of his secured creditor as well. ■ This was done by Detroit's attaching a special rider to the policy, as follows: "This endorsement applies to Fageol chassis only. Loss, if any, subject to all terms and conditions of this policy is payable to Fageol Truck and Coach Company." Such special endorsement prevails over any contrary provision of the body of the policy. Since the rider made the loss payable to Fageol, the rider controls and Fageol became the "assured" (*Aetna Ins. Co.* v. *Sacramento-Stockton S. S. Co.,* 273 Fed. 55, 58; 32 C. J. 1160) and Thomas' protection did not commence until Fageol should be wholly indemnified. ■ Moreover, the contract of purchase provided that loss resulting from collision should be paid to Fageol to the extent of its unpaid balance. Detroit had knowledge of such provision as evidenced by warranty 6 of the policy, which declares the truck to have been purchased on a "Conditional Sales Contract". That instrument contained clauses that Fageol might repossess the truck and hold it free of all claims of buyer upon his default; that buyer must insure the truck for an amount not less than the unpaid balance; that Fageol should, as Thomas' agent, collect any insurance for collision. By such provisions Detroit assumed the risk of the title's passing from Thomas to Fageol after a loss might occur. (*Brown* v. *Northwestern Mut. Fire Assn.,* 176 Wash. 693 [30 Pac. (2d) 640, at 643].)

■ *Inasmuch as the policy and its endorsement made it payable to Fageol in case of loss, the latter's rights were fixed at the time of the loss.* (*Harrington* v. *Fitchburg Insurance Co.,* 124 Mass. 126, 131.) ■ The fact that an insurance contract is designed primarily to indemnify the titular owner in the case of a mortgage or the vendee under a conditional sales agreement against the loss of the insured property arising from a contingent or unknown event (Insurance Code, sec. 22) does not defeat the rights of a beneficiary named in the rider at the request of the assured.

We are directed to no Washington statute that precludes the insured from contracting for an indemnity against loss to his creditor who is secured by the property covered. Inasmuch as Fageol was specified in the Detroit endorsement as one intended to be insured, the coverage must be applied to its interest. It is a circumstance of daily occurrence that a mortgagee requires his debtor to procure insurance upon the mortgaged property payable to the mortgagee to the extent of his loss. It is equally as common that a mortgage indebtedness is secured by the debtor's contract with the insurer to cover the interest of the creditor by a proper endorsement on the policy. ██ ''Insurance policies are contracts to indemnify against contingent losses'' (*Nash* v. *New York Life Ins. Co.*, 272 Mich. 680 [262 N. W. 441]) and once procured by the titular owner of the property, the mortgagee's indemnity cannot be defeated by any act of the insured after loss has occurred. (38 A. L. R. 379, 383.) Where a loss payable clause is annexed to a policy, the indemnitee named in the endorsement is as much entitled to indemnification for his loss as is the person named as the insured. By no adjustment made between the mortgagor and the insurer can the mortgagee be defeated of his indemnity under the policy. When, upon the happening of the loss, the mortgagee's rights have become fixed, he can suffer no loss or diminution of his rights because of his debtor's subsequent actions. (*Georgia Home Ins. Co.* v. *Stein*, 72 Miss. 943 [18 So. 414, 415].)

### *Acceptance of insurance by Fageol.*

██ It is next contended that Fageol never accepted the Detroit insurance. Acceptance was wholly unnecessary. Neither the policy nor its endorsement required acceptance by either beneficiary. No statute required such acceptance. Under the custom and practice of insurance companies, as found by the court, when, following Thomas' application for a policy, it was issued to him, it became a binding contract for the benefit of the assured and his beneficiaries, for the term specified. It was found by the court that the plaintiff neither rejected the Detroit insurance nor concealed the fact of the repossession of the truck; that it was never falsely represented to Detroit that at the time of the accident there was no other insurance covering the truck or that plaintiff

had not repossessed nor intended to repossess the truck or that after its repossession it was and continued to be in the possession of Thomas; that the payment of the Detroit premium was not made with intent to deceive appellant or to prevent it from discovering facts which would constitute a defense to this action or with the intent of aiding anyone in concealing material facts from Detroit. When the fact of the Detroit policy became known to Fageol, it made itself a party thereto in adopting the policy by acting upon it. (*De Cicco* v. *Schweizer*, 221 N. Y. 431 [117 N. E. 807, Ann. Cas. 1918C, 816].) So long as Fageol's conduct discloses that it had knowledge of the existence of the Detroit policy and that it took steps toward the enforcement of its rights thereunder, its acceptance was established. Such acceptance was properly inferable from the authorization to Fageol by Detroit to make the repairs and by the latter's promise to pay the bill. (*Blake* v. *Atlantic Nat. Bank*, 33 R. I. 464 [82 Atl. 225, 39 L. R. A. (N. S.) 874]; *Farrell* v. *Anderson-Dulin-Varnell Co.*, 211 Ala. 238 [100 So. 205, 206].) The fact that more positive action by Fageol might have been taken immediately following the loss does not defeat Fageol's acceptance as established by the finding.

But the ingenious argument of appellant that Fageol never accepted the policy is beside the point. While we have demonstrated above that plaintiff's acceptance was, under the authorities, wholly unnecessary, at the same time there was nothing for Fageol to accept. The only ''acceptance'' which appears to have been appropriate or to have been actually indicated was that of Detroit at the time of Thomas' application for a policy. There were no extended negotiations; neither was there any counter-offer by Detroit to Thomas following his request for a policy on his truck, such as would require an acceptance by Thomas or by either beneficiary named in the endorsement. (32 C. J. 1107, sec. 196.) The policy was ordered by brokers acting for Thomas on December 20, 1932. The policy was promptly forwarded. The same brokers remitted payment for the premium. That completed the contract which by virtue of the endorsement at once made Detroit contingently liable for loss to Fageol. Under the custom of insurance agents, Thomas had sixty days within which to pay the premium. It was paid and the whole thereof was never returned by Detroit to Thomas. He

still held the policy on the day of the collision and for six months thereafter. From these facts the conclusion is inescapable that, following the collision of the truck, Fageol became vested with the absolute right to recover from Detroit the amount of its loss.

■ Appellant makes much of the fact that Fageol declined to cancel its policy with Pacific when requested to do so after being advised of the issuance of the Detroit policy. Such request, however, was a gratuitous query of the brokers, not of Detroit. There was nothing in such refusal that would constitute a repudiation of the Detroit policy. Fageol had good reason to decline the substitution of the Detroit policy. Its premium was unpaid and it carried a clause whereby it could deduct $250 from any loss that it might be called upon to pay on account of damage to the truck resulting from a collision. To surrender the Pacific policy and accept in lieu thereof the policy of Detroit at a cost of $493 more than the cost of the Pacific insurance would have been justified on no sound business principle and, besides, Fageol would have lost that portion of the Pacific premium already earned. The only basis for Detroit's claim of Fageol's rejection of the Detroit policy was Fageol's refusal to take the Detroit policy "in lieu of the policy now in force." Fageol originally acquired the Pacific policy and insisted upon keeping it in force because plaintiff was thereby indemnified against total collision loss. It maintained such position, as a result of which Pacific paid the Detroit premium on behalf of Thomas. We conclude, therefore, that the policy was accepted by Fageol—if acceptance has any virtue—and that after reliance had once been placed thereon, the rights of Fageol thereunder could not be impaired by any agreement of Thomas and Detroit. (13 C. J. 602, sec. 625.)

### Rescission of Detroit policy.

■ An agreement made on July 14, 1933, by Thomas and Detroit to cancel the policy did not impair the rights of Fageol thereunder. Such rights were permanently vested at the moment of the loss. The policy, free from fraud, was issued on December 20, 1932. The truck was damaged the following January 18th. Verified proof of loss was served upon Detroit March 16th. The repairs, under the authorization of appellant, were completed April 10, and on the 17th

of the same month Detroit induced plaintiff to reduce its charges and finally promised to pay the repair bill in the sum of $2865.31 as well as the cost of towing. With knowledge of the loss, and having approved the bill for repairs, Detroit accepted the premium on the 23rd day of May, practically four months after the truck's collision. Appellant conceives the attempted cancellation to be in the same category as that where two parties to a contract rescind it before the beneficiaries commence to enforce it. But such is far from the situation here. The premium having been paid on the policy on May 23, it was not until the 14th day of July following that Thomas, with the consent of Pacific, requested Detroit to cancel the policy. The request was granted and the unearned portion of the premium was, without the knowledge of plaintiff, returned to Thomas. At the time of the attempted cancellation the policy and its rider were in full force as they had been at the time of the loss. While the cancellation voided all future liability of Detroit (*Duncan* v. *New York Mut. Ins. Co.*, 138 N. Y. 88 [33 N. E. 730, 20 L. R. A. 386]), at the same time Thomas was powerless to effect a cancellation of Fageol's insurance under the endorsement after the loss had occurred. Such cancellation could not retroact to the date of issuance, as might have resulted by virtue of the rescission of a voidable agreement. The act of Thomas was nothing more than the exchange of Detroit's future liability for the unused portion of the premium. At the time of the so-called cancellation Thomas as the "insured" vendee was powerless to make any contract that might release Detroit from its obligation incurred prior to his surrender of the policy. (*Nash* v. *New York Life Ins. Co.*, *supra*.) By virtue of the loss Detroit's obligation had been transmuted from a contingent liability to a certain obligation.

Detroit's absolute debt to Fageol could not have been extinguished by Detroit's acquiring manual possession of the policy subsequent to the loss. Indeed, it is not even suggested that any attempt was made by Thomas to absolve appellant from any obligation already incurred. Therefore, not only by the principle announced in the Nash case, *supra*, is Fageol entitled to recover under the Detroit policy and its endorsement but its rights are unimpaired by the very failure of Thomas to antedate his surrender even if he had possessed

the power to do so. ■ Although the charge is veiled, nevertheless it is clear from the argument of appellant that it conceives itself to have been aggrieved by the suppression of facts, the knowledge of which in good faith it should have received at some time prior to the close of events which culminated with Detroit's acceptance of the proof of loss and its approval of the bill for repairs. But if this be an accusation, it is not justified. At the time of the issuance of its policy, Detroit had notice that Thomas had purchased the truck under a conditional sales agreement. Of the contents of such agreement Detroit had knowledge or easy access thereto. In the proof of loss filed March 16, 1933, Thomas stated that he was the owner of the truck as a conditional sales purchaser. The proof of loss contained nothing to indicate that there was no other insurance on the truck. Neither did the claimant conceal from Detroit the actual purchase price nor misrepresent any material fact. It may be fairly inferred that if such had occurred Detroit would have offered to rescind the policy and to restore a part of the premium or to do some other act consistent with an offer to do equity. Appellant having duly performed all conditions on its part to be performed, it stands now in a position to reap the benefits of a contract made for its benefit.

### Repossession.

■ It is the contention of appellant that the repossession of the truck and the termination of Thomas' interest under his contract of purchase, after the insurance loss effected the release of Detroit from the obligation to pay either Thomas or Fageol the amount of loss suffered.

In *Brown* v. *Northwestern Mutual Fire Assn., supra,* this identical question was determined. Pursuant to the terms of a conditional sales contract, the purchasers of real property, Dorothy Barger and husband, procured a policy from the insurance association whereby the insurance was to be payable first to the bank mortgagee in the amount of the unpaid portion of the first mortgage; secondly, to the sellers to the extent of the unpaid part of the purchase price of their equity; thirdly, to the purchaser. For breach of the contract the sellers, Brown and Bolton, terminated the Barger contract November 22, 1932, and filed suit to enforce the forfeiture of the Barger interest. While that action was pend-

ing the house burned to the ground. The insurer paid the mortgage and took an assignment. In its action to foreclose the mortgage the insurer contended that the termination of the purchasers' rights after the fire had effected a release of the insurer from liability to Mrs. Barger. But the Bargers, as vendees under a conditional sales contract, did not lose their interest in the property until some time after the fire. The association by contract had insured their interest and had undertaken the risk of the title's passing from the Bargers to Brown, the other insured. The purchasers had an insurable interest in the premises as did also Brown and Bolton, the vendors, who, as owners of the legal and equitable title, had "the undoubted right to step into the shoes of the Bargers" and "they should be as fully protected as the bank as mortgagee."

The truck, while in Thomas' possession, having suffered impairment to the extent recited, the insurance money stood in lieu of the property destroyed. By its contract, as contained in the policy and its endorsement, Detroit contemplated that Thomas might fail to make good under his agreement of purchase; that the truck might be destroyed; and that the successor in interest to Thomas would be entitled to the insurance fund. If such was not intended by Detroit, the act of affixing the endorsement insuring Fageol's interest was an idle ceremony. ▮▮▮▮ That the vendor under a conditional sales contract has an insurable interest in the chattel sold by such contract is emphatically established. (*Brown* v. *Northwestern Mut. Fire Assn., supra.*) Under the law of California (*Kleiber Motor Truck Co.* v. *International Indemnity Co.,* 106 Cal. App. 709 [289 Pac. 865]), the seller of a truck may recover the insurance procured by the assignee of the original purchaser notwithstanding that the vendor is ignorant of the fact that the loss was payable to him. He had an insurable interest, covered by the policy "payable as their interest appeared." Also, under a conditional sales agreement the purchaser has an insurable interest. (*Dunne* v. *Phoenix Ins. Co.,* 113 Cal. App. 256, 260 [298 Pac. 49].) And this is true even beyond the amount actually paid on the purchase price. (*Vigliotti* v. *Home Insur. Co.,* 206 App. Div. 398 [201 N. Y. Supp. 407, 408].)

Appellant's efforts to apply the holding of certain authorities have led it into error. The case of *Reynolds* v. *Lon-*

*don etc. Ins. Co.,* 128 Cal. 16 [60 Pac. 467, 79 Am. St. Rep. 17], is cited in support of their claim that Fageol's protection under the policy was defeated by the forfeiture of Thomas' rights under the purchase agreement. But the Reynolds case merely determined that the mortgagee named as such in the mortgagor's insurance policy forfeited his interest therein upon becoming purchaser at his foreclosure sale. ■■■ But in both Washington and California the relationship between the buyer and seller under a conditional sales contract is not that of debtor and creditor. Under such contracts the title remains in the vendor until the stipulated conditions have been fulfilled. (*Barbour* v. *Hodge,* 99 Wash. 578 [170 Pac. 115, 119].) If by reason of a breach of conditions the vendee's rights are terminated after the loss insured against, the vendor may recover to the extent of the damage to the chattel against the insurer. (*Brown* v. *Northwestern Mut. Fire Assn., supra.*)

Appellant's authorities (*James* v. *Allen,* 23 Cal. App. (2d) 205 [72 Pac. (2d) 570]; *Martin Music Co.* v. *Robb,* 115 Cal. App. 414 [1 Pac. (2d) 1000]; *Murphy* v. *Hellman Commercial etc. Bank,* 43 Cal. App. 579 [185 Pac. 485]; *Covington* v. *Lewis,* 83 Cal. App. 8 [256 Pac. 277]; *Frankel* v. *Rosenfield,* 95 Cal. App. 647 [273 Pac. 122]; *Smith* v. *Miller,* 5 Cal. App. (2d) 564, 569 [43 Pac. (2d) 347]), are not in point. Those cases merely hold that when the vendor of a chattel under a conditional sales contract elects to disaffirm the contract and repossess the property and enforce the agreement he is bound by his election. That principle is not in conflict with the holding of the Brown case under which Fageol was not only an assured but also became owner of Thomas' interest in the truck, upon the latter's forfeiture of that interest and was entitled to payment by Detroit for damage to the truck out of Thomas' indemnity under the Detroit policy.

■■■ Under our view of the language of the conditional sales contract, the Detroit insurance was to stand in lieu of the property lost by virtue of the collision and, therefore, Fageol's repossession of the truck did not defeat its right to be indemnified for the damage to the property.

*"Other insurance."*

■■■ The Detroit policy provided that no recovery should be had thereunder if other insurance covered the loss.

The trial court found that such clause did not apply to the excess insurance provided by the Vendor's Single Interest Coverage endorsement annexed to the Pacific policy. This ruling was correct. The clause relied upon by the appellant to defeat its liability follows:

"No recovery shall be had under this policy if at the time a loss occurs there be any other insurance, whether such other insurance be valid and/or collectible or not, covering such loss, which would attach if this insurance had not been effected."

Detroit contends that by virtue of the quoted clause it was released from liability because the "Vendors Single Interest" endorsement on the Pacific policy insuring Fageol against loss by collision was such "other insurance". ▮ However that endorsement does not protect plaintiff against all collision losses but only in the case of "accidental collision . . . occurring while the automobile is in possession of the purchaser [in which event if] the purchaser has defaulted in his payments and the assured has repossessed the automobile [the loss insured shall thereupon be payable]". Considering the last quoted clause as found in the V. S. I. endorsement, it is self-stultifying. Without interpolating the language enclosed within the brackets, it apparently requires that the possession be in the purchaser and at the same time "repossession" must have been accomplished by the vendor. That which was evidently intended, however, and which under the rule of strict construction it must be held to mean, is that if a collision occurs while the truck is in the possession of the purchaser and if he has defaulted in his payments, and if the vendor has repossessed the automobile, the insurer is thereupon obligated to pay the vendor the loss insured. This is clearly evidenced by other clauses of the V. S. I. endorsement whereby it is provided that the assured, Fageol, after having "repossessed the automobile but has failed to collect overdue balances . . . assured shall give immediate notice of loss to this company"; that the date of the receipt of notice of loss shall be construed as the date of the loss; that the V. S. I. endorsement is specified to be "excess" insurance where specific insurance exists and "shall not apply nor contribute to the payment of any loss until all such *specific* insurance shall have been exhausted."

The Detroit policy was such specific insurance. It must be exhausted before the Pacific's "excess insurance" could be forced to contribute to the loss. (1) At the time of the collision of the truck, the Pacific insurance and its V. S. I. endorsement was not in force and could not be until the car was repossessed which did not occur until February 20, 1933. If the Pacific insurance did not attach on the day of the collision it could not have been such insurance as would relieve Detroit from its liability under its policy. Before the V. S. I. endorsement could cover Fageol's interest in the truck, it was necessary that the car be not only repossessed but also that Fageol first have vainly attempted to collect from Thomas the balance of the purchase price. Had there been no repossession or had Thomas paid his debt to Fageol there could have been no claim under the Pacific policy even in the absence of the Detroit policy. In the absence of repossession and attempts to collect from Thomas, the claim of loss could not successfully have been made against Pacific. However, both incidents having occurred, the Pacific coverage became "excess" or "secondary" insurance. (2) Since it was such "excess" the trial court correctly determined that it was not the other insurance intended by the quoted provision of the Detroit policy.

But if there be any ambiguity in the Detroit policy, it must be resolved against the insurer. (32 C. J. 1152, sec. 265.) If to give the quoted clause the meaning contended for would release Detroit from liability, then it must be construed so as to permit recovery since it is "susceptible of such construction." Where two interpretations equally fair may be made, that which affords the greatest measure of protection to the assured will prevail. (32 C. J. 1155, sec. 265; *Hartford Steam Boiler etc. Co.* v. *Cochran Oil Mill etc. Co.,* 26 Ga. App. 288 [105 S. E. 856, 859].)

The "excess" insurance of the Pacific policy could not have been contemplated by the "other insurance" clause of the Detroit policy for the reason that the liability of the former could not be established where a primary policy was in effect at the time of loss. This principle is exemplified in the case of *St. Paul Fire & Marine Ins. Co.* v. *Garza County Warehouse and Marketing Ass'n,* 93 Fed. (2d) 590. The warehouse had obtained a policy from the St. Paul Fire and Marine Insurance Company covering cotton while held in

storage for its patrons. A clause in that policy provided that it did not cover any cotton on which the owner had other insurance ''except on the value, if any, in excess of such insurance.'' The owners of certain cotton took out a policy with the Insurance Company of North America which also provided that the policy should be void to the extent of any other insurance, directly or indirectly covering the same property and that, since it was to be void in the event of ''other insurance'' it could not itself be ''other insurance'' within the meaning of the clause. The circuit court held that St. Paul Fire and Marine policy did not cover as to the cotton except as excess insurance and that as to the North America policy's covering the cotton, defendant's (St. Paul Fire, etc.) policy was simply ''excess insurance'' not ''other insurance.''

Upon a consideration of the foregoing, we are impelled to hold that the Pacific policy was excess insurance and that it was not the ''other insurance'' alluded to in the Detroit policy.

Judgment is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Pullen J., *pro tem.*, concurred.

Appellant's petition for a rehearing was denied November 6, 1941.