WILLIAM B. DUNCAN, JR., Respondent, *v.* THE NEW YORK
MUTUAL INSURANCE COMPANY, Appellant.

Defendant issued a policy of insurance for $5,000 upon a vessel for one
year from August 3, 1888. The policy contained a provision that
defendant would "return *pro rata* premium for every thirty days of
unexpired term if the policy be canceled on arrival." On November
twenty-second the vessel sailed on a voyage, the ordinary length of which
was seven days. At the request of plaintiff, then agent of the owner of
the vessel, the policy was canceled at and from December third, and the
unearned premium, $233.33, returned. At that time neither party had
heard from the vessel since it sailed; plaintiff supposed it had arrived.
The vessel never reached her port of destination, but was lost prior to
December third. In an action to set aside the cancellation and to recover
upon the policy, *held*, that the cancellation looked to the future, not the
past, and if binding, it did not absolve defendant from liability already
incurred; also, that as at the time of the cancellation an absolute obliga-
tion existed to pay the amount of the policy, it was not discharged by the
cancellation and payment made, and this, even if the parties had known
of the loss, and had by parol agreement agreed that defendant should
be discharged by the payment; also that as the cancellation was made
under a mistake of fact, defendant was entitled to have it rescinded, if
necessary.

*Dambmann* v. *Schulting* (75 N. Y. 55); *Whittemore* v. *Farrington* (76 id.
457), distinguished.

Proofs of loss were furnished April 8, 1889, and in May, 1890, plaintiff
offered to return the $233.33. No defense based upon *laches* was set up
in the answer, the question was not raised on the trial, and there was no
finding in reference thereto. *Held*, that the question could not be raised
on appeal.

(Argued March 20, 1893; decided April 11, 1893.)

APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
May 2, 1892, which modified and affirmed, as modified, a judg-
ment in favor of plaintiff entered upon a decision of the court
on trial at Special Term.

This action was brought by plaintiff, as assignee of the
Steamship Samana Company, Limited, to set aside the cancel-
lation of a policy of insurance issued by defendant, and to
recover the amount thereof.

The facts, so far as material, are stated in the opinion.

*J. Langdon Ward* for appellant. Unless the cancellation is properly set aside and rescinded, the judgment must be reversed. (*Bolton* v. *Carlisle*, 2 H. Black. 260; *A. C. Bank* v. *Leonard*, 40 Barb. 119; *Baker* v. *C. M. Ins. Co.*, 57 Mich. 243.) No case is made, either by the evidence or the findings of fact in the court below, to justify the second conclusion of law of the court and the setting aside of the cancellation of the policy. (*Whittemore* v. *Farrington*, 76 N. Y. 457; *Wilson* v. *Dun*, 74 id. 531; Story's Eq. Juris. § 150; *Dambmann* v. *Schulting*, 75 N. Y. 55; *Grymes* v. *Saunders*, 95 U. S. 55–62; *Thomas* v. *Bartow*, 48 N. Y. 200.) Assuming that the cancellation of this policy is set aside and the policy reinstated, the "Steamship Samana Company" is then the assured. The policy was issued to the plaintiff, on account of whom it may concern. The phrase "whom it may concern" is a technical one, and is understood to mean not anybody who may have an interest in the thing insured, but only such as are in contemplation of the parties making the contract. Such a policy supposes an agency, and, proceeding on that ground, looks only to the principal, in whose behalf or on whose account the agent moves in the transaction, and he for whose benefit the insurance is procured is the person in the contemplation of the parties — is he whom alone it concerns. (Phillips on Ins. § 383; *Crosby* v. *N. Y. M. Ins. Co.*, 5 Bosw. 369–377.)

*Everett P. Wheeler* for respondent. The agreement for cancellation was without consideration. (*Bunge* v. *Koop*, 48 N. Y. 225; *Coe* v. *Hobby*, 72 id. 141; *Smith* v. *Kerr*, 108 id. 31; *Greason* v. *Keteltas*, 17 id. 491.) The defendant argued that in order to constitute a mistake for which a court would rescind a contract, it was necessary to show a positive and erroneous belief, and also to show that this mistake was mutual; or, in other words, that it existed in the minds of both parties. Neither of these propositions is applicable to

the case of an action to rescind a contract. (Story's Eq.
Juris. §§ 134, 140, 141, 143 ; 2 Kent's Comm. 468 ; *Belknap*
v. *Sealey*, 14 N. Y. 143; *Marvin* v. *Bennett*, 26 Wend. 169 ;
*Bank of Commerce* v. *N. M. Bank*, 55 N. Y. 211; *Rheel*
v. *Hicks*, 25 id. 289 ; *Hunt* v. *Rousmanier*, 1 Pet. 1; *Diman*
v. *P. R. R. Co.*, 5 R. I. 130 ; *Paget* v. *Marshall*, L. R.
[28 Ch. Div.] 255.) Defendant put in evidence certain poli-
cies effected in London on the *Samana* for a year from
noon of December 3, 1888. It is not perceived that any point
concerning these policies is raised by the exceptions, and
none was argued in the court below. They certainly
cannot affect the plaintiff's recovery, for they have
no legal validity. (*Hammond* v. *Allen*, 2 Summ. 387;
11 Pet. 63.) The defendant's contention is that the cancella-
tion of the policy was equivalant to a rescission of the original
contract, and made it as if it had never been. This is not sup-
ported by the proof and is untenable in law. (*Elwood* v. *W. U.
T. Co.*, 45 N. Y. 549; *Baker* v. *C. M. F. Ins. Co.*, 51 Mich.
243.) The defendant was not in any way prejudiced by the
omission of the plaintiff to give at an earlier day formal
notice of his election to rescind. It is on the ground of
injury to the defendant that the cases rest which the defend-
ant cites on the subject of laches. (*Thomas* v. *Bartow*,
48 N. Y. 193 ; *Bank of Commerce* v. *N. M. Bank*,
55 id. 211; *U. S.* v. *Park Bank*, 6 Fed. Rep. 852.)
The defendant claimed that there was not sufficient
proof of seaworthiness, because the proper stowage of
the *Samana* was not sufficiently proved. On this point the
learned judge found for the plaintiff. The evidence was
ample to support the finding. (*Moses* v. *S. M. Ins. Co.*, 1
Duer, 159 ; 3 Kent's Comm. 288 ; *Thompson* v. *Hopper*, 6
El. & Bl. 172 ; *Jones* v. *B. L. Ins. Co.*, 61 N. Y. 79.) Con-
siderable time was spent on the trial in the endeavor to show
that Duncan was not authorized to sign the assignment to
Barnes. The assignment was unimportant. It was advised
only for greater caution. But if the court consider the rul-
ings as to this made at Special Term on this point, they will

be sustained. (*Peterson* v. *Mayor, etc.*, 17 N. Y. 449, 453; *Kraft* v. *F. P. Co.*, 87 id. 628; *Summerville* v. *H. & S. J. R. R. Co.*, 62 Mo. 391.)

EARL, J. The policy of insurance in this case was contemporaneous with the policy issued upon the same vessel which was under consideration in the case of *Duncan* v. *China Mutual Insurance Co.* (129 N. Y. 237). The two policies were quite similar and the questions of law and fact involved in the two cases were nearly the same, except the facts growing out of the cancellation of the policy in this case, which will now be stated. It was agreed in this policy that the defendant would "return *pro rata* premium for every thirty days of unexpired time, if the policy be canceled on arrival." The policy by its terms was to run and cover the vessel from August 3, 1888, at noon, until August 3, 1889, at noon. The vessel sailed from New York for Aux Cayes in Hayti, November 22, 1888. On the 28th day of November it was arranged between the plaintiff and the Samana Steamship Company, then owning the vessel, that the policies which were then held upon the vessel should be canceled at and from noon of the 3d day of December, 1888, and that new policies should be procured to take effect at that time. Pursuant to that arrangement the plaintiff applied to the defendant to cancel the policy in question at and from December 3d, and to return *pro rata* premium for the unexpired time, eight months, amounting to the sum of $233.33, and the defendant agreed so to cancel the policy, and accordingly wrote across the face thereof the following: "Canceled at request of insured, R. P., for eight months, December 3, 1888. T. B. B., Jr., Pt.;" and also indorsed on the policy the following: "Pay $233.33 return premium, and cancel policy. December 3d, 1888. T. B. B., Jr., Pt." And the defendant paid to the plaintiff the amount of the return premium. At the time of the application for the cancellation of the policy the plaintiff supposed that the vessel had arrived at the port of Aux Cayes, and the defendant at that time was ignorant

whether or not she had reached that port, and did not in accepting the proposition to cancel the policy consider whether or not she had reached that port. From the time of the sailing of the vessel from New York to the third day of December, no information had been received by either party as to her arrival or non-arrival at the port of destination, and at that time it was not possible that such information could be received, as there was no telegraphic communication between this country and that island, and neither party then had any knowledge of the safety or loss of the vessel. The ordinary length of a voyage from New York to Aux Cayes for such a vessel was seven days. The vessel never reached her port of destination. No traces of her were ever seen or found, and she became a total loss during a violent hurricane prior to the 3d day of December.

The claim of the defendant is that it was absolved from any liability upon its policy because of the cancellation thereof on the third day of December. To this claim, we think there are three satisfactory answers:

(1) The cancellation of the policy looked to the future and not to the past. It was the *pro rata* unearned premium which was returned. The parties did not bargain for the entire destruction of the policy, as the defendant kept the premium for the first four months. That was its indemnity for the risk it took during that time, and the policy was canceled only for the remaining eight months. The cancellation was not intended to reach back and absolve the defendant from any liability which it had already incurred. If, therefore, we assume, as claimed by the defendant, that the cancellation was valid and binding upon both parties, we do not think that it exempted the defendant from liability for the loss which occurred during the four months when the policy was in force.

(2) At the time of this cancellation, the loss had occurred, and the defendant was under an absolute obligation to pay the $5,000 insured. If the parties had known of the loss and had come together and formally agreed by an oral or written agreement, not under seal, that the defendant should be

absolved from liability by the payment of the sum of $233.33, it would not have been discharged from liability for the balance. An absolute, undisputed liability to pay $5,000 could not be discharged by the simple payment of $233.33. (*Bunge* v. *Koop*, 48 N. Y. 225; *Coe* v. *Hobby*, 72 id. 141; *Smith* v. *Kerr*, 108 id. 31.) The fact that the discharge was given by mistake cannot give it greater effect, or place the defendant in a better position than it would occupy if the discharge had been purposely given with knowledge of all the facts.

The plaintiff could have recovered the balance of the $5,000 upon either of these two grounds in an action at law, without setting aside the cancellation written upon the policy; and as this judgment is for the precise sum to which the plaintiff would have been entitled in an action at law, it should not be reversed because the plaintiff also asked for equitable relief.

(3) The plaintiff in his complaint alleged all the facts and prayed for relief that the cancellation of the policy should be rescinded and set aside and that he should recover $5,000, less the sum of $233.33 returned to him for the unearned premium. The trial court found, what was absolutely true, that the cancellation was made by mistake. The insured could demand the return of unearned premium only upon the arrival of the steamship at her destination, and it was only upon her arrival that the defendant was bound to make the cancellation and return the premium. Both parties manifestly supposed on the 3d day of December that the vessel had reached her destination. Both parties were mistaken as to that fact, and both were ignorant of the loss of the vessel prior to that time. So it is entirely clear that the cancellation was made under a mistake of fact. It was at least made under a mistake of fact by the plaintiff, and, therefore, upon the return of the money paid to him he was entitled, under familiar principles of law, to have the cancellation rescinded. The learned counsel for the defendant claims that we decided something in conflict with these views in *Dambmann* v. *Schulting* (75 N. Y. 55) and *Whittemore* v. *Farrington* (76 id. 457). In the former case we held that ignorance of a fact extrinsic and not essen-

tial to a contract, but which, if known, might have influenced the action of a party to the contract, is not such a mistake as will authorize equitable relief; that as to such facts the party must rely upon his own vigilance, and that if not imposed upon or defrauded he will be held to his contract. Here the essential facts in reference to which the parties were mistaken were not extrinsic but they were intrinsic and essential to the contract of cancellation and were involved therein. The parties were dealing with the policy which both supposed to be in force covering the risk insured on the 3d day of December, with premiums which both parties believed were unearned, in reference to a vessel which both parties believed to be in existence. As to all of these facts they were mistaken. The vessel was lost. The policy had matured, and all the premiums had been earned.

Without commenting upon the case of *Whittemore* v. *Farrington*, it is sufficient to say of it that a discriminating examination of it shows that it is not an authority for the defendant in this case. Upon the facts appearing in this record we see no reason to doubt that the court had the power to relieve the plaintiff from the mistake alleged.

The vessel was lost in November, 1888. The proofs of loss were furnished April 8, 1889, and the plaintiff did not offer to repay the $233.33 until May, 1890, and the defendant now claims that by retaining this sum so long the plaintiff was guilty of *laches* and so ratified the cancellation, and that he was not entitled thereafter to have it rescinded. There is no explanation contained in this record of this long delay. We may assume that it was explainable in such a manner as not to prejudice the plaintiff's right of recovery in this action, as no defense based upon that delay was alleged in the answer, nor in any way alluded to or insisted upon at the trial, and there is no finding of fact or of law in reference thereto. All that we have in the record on this subject is that the money was paid to the plaintiff and was not tendered to the defendant until May, 1890. Upon such a state of the record it is manifest that the defendant cannot now insist upon the

alleged *laches* as a defense. If the point had been made in the answer, or upon the trial, it is possible that the delay would have been explained.

There are no other exceptions in the record requiring attention, and the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.