## PENNSYLVANIA SLOVAK ROMAN AND GREEK CATHOLIC UNION v. AMERICAN SURETY CO. OF NEW YORK.

### No. 5221.

Circuit Court of Appeals, Third Circuit.

March 2, 1934.

Rehearing Denied April 9, 1934.

Peter P. Jurchak and David Rosenthal, both of Wilkes-Barre, Pa., for appellant.

Paul G. Collins and M. J. Martin, both of Scranton, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The Catholic Union had five accounts with the Pennsylvania Liberty Bank and Trust Company, of Wilkes-Barre, Pennsylvania, two checking accounts and three savings accounts; interest on the former being at one rate and interest on the latter at a higher rate. For a long time the Union had, in a way not unusual in rural banking, drawn against all accounts at sight. It held bonds of the bank, with the American Surety Company as surety, ensuring payment of its deposits. These bonds were in force when, on September 11, 1931, the surety company gave five days' notice, as under their terms it had a right to do, terminating its liability upon the bonds. Within the five day period, duly authorized officers of the Union presented themselves at the bank with pass books and checks. Just what happened, except, as they said, "we demanded our money", is not at all clear from the testimony. There is evidence, however, that they at least made demand of the bank for its savings deposits by presenting checks. The bank refused payment, giving as a reason that on September 4 its Board of Directors, by resolution, had limited the right of withdrawal of money from savings accounts by requiring sixty days' notice thereof. Thereupon the Union gave the bank sixty days' notice, but before that period had expired the bank closed its doors. Later, the Union gave (or did not give) notice, as the bonds required, to the surety company of "default" by the bank in paying its checks. On refusal of the surety company to pay the deposits because, as it said, "no default (had) occurred within the terms of the bonds," the Union brought this suit against the surety.

At the trial there was a good deal of testimony, more or less conflicting, as to demand, default, notice thereof to the surety, and the practice of the bank with respect to the plaintiff's deposits and withdrawals. But at the end of the trial, this testimony was not submitted to the jury but to the court on a motion by each party for a directed verdict in its favor, bringing into action the rule of Beuttell v. Magone, 157 U. S. 154, 157, 15 S. Ct. 566, 567, 39 L. Ed. 654, applied in Williams v. Vreeland (C. C. A.) 244 F. 346, 352, and Equitable Life Assurance Society v. Larocco (C. C. A.) 68 F.(2d) 451. There the Supreme Court, after distinguishing this procedure from the submission of a case to the court without the intervention of a jury, under Rev. St. §§ 649, 700 (28 USCA §§ 773, 875), said: "As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited, in reviewing its action, to the consideration of the correctness of the finding

on the law, and must affirm if there be any evidence in support thereof."

Evidently acting under authority of that decision, the learned trial court found, as a matter of fact, that the plaintiff had not demanded payment of money from the checking accounts and therefore the defendant had not defaulted in respect to those accounts, and found, as a mixed matter of fact and law, that there was no default by the defendant in respect to payment of the savings accounts because the plaintiff had not made a "legal demand" therefor "during the (terms) of the (bonds)." Accordingly, it directed the jury to render a verdict for the defendant. From the judgment that followed the plaintiff appealed, assigning several errors which we shall develop in the discussion which follows:

■ In reading the record and reviewing the action of the trial court, first, on its findings of fact, we discover ample evidence to support them. Next, in reviewing the court's action in its finding on the law arising from the facts found, it should be observed that the liability of the surety company rested, within the terms of the bonds, on default by the bank on a "legal demand" for payment of "all moneys deposited" by the plaintiff (as we construe it) in accounts of both classes. The central question in the case is really what constitutes a legal demand? Legal demands on checking accounts could be made by the mere presentation of checks which, according to the evidence and the finding of the trial court, was not done in this case. Legal demands on savings accounts must, of course, conform to the current rules of the bank which in this case could be made only after sixty days' notice thereof. Default in payment on such a demand occurs not when notice thereof is given but when, later, the demand is made; and liability of a surety company therefor arises only when default in payment upon such a legal demand happens.

The bank is a merger of two other banks which also had the sixty day rule in respect to notice of withdrawals from savings accounts but in good times it was relaxed and perhaps ignored. However that may be, the bank revived the rule and put it into force on September 4, 1931, eight or ten days before the plaintiff asked for payment of its deposits. If that were all there is in the case, it would fall squarely within the Beuttell-Magone rule and the court's findings of fact would be conclusive and its findings on the law as to what constitutes legal demand

would be approved. But during the trial the attorney for the plaintiff, in interrogating a witness, asked him a question by directing him to state: "What the agreement and practice was with regard to withdrawals on those five accounts during the time that you have been president of this organization?" The defendant objected and the court sustained the objection. The exception which was allowed supports an assignment of error.

■ As the plaintiff made no tender, pursuant to Pennsylvania practice, of the evidence it sought to obtain by an answer to the question, the trial court could not know its significance. Neither can this court. The plaintiff did not assert a contract or practice with respect to itself different from that which existed between the bank and all its depositors; nor did it deny that it had subscribed to the limitation appearing on all its pass books— "subject to the rules and regulations of this bank"; nor did it challenge the right of the bank within its "rules and regulations" ordinarily to prescribe notice of withdrawal from savings accounts, even if such a rule had not always been in force. The plaintiff's position, which it sought throughout the trial to establish by evidence, was that as the bank had never before required it to give notice of a demand for payment of savings funds, a legal demand for such payment could in this instance be made without notice. Whatever practice, and understanding arising from it, may have existed before September 4, when the bank imposed or re-imposed its sixty day rule, the practice after that date was "subject to" that revived rule and regulation and it was after that date the plaintiff made its first move to withdraw its money. The bank had from time to time promulgated rules and pursued practices governing withdrawal of its deposits and, there being no evidence to the contrary, it appears that the plaintiff made, and long continued to make, deposits subject to the bank's right to do so. This, we think, the record shows and, anyhow, this the plaintiff cannot now dispute, for in moving for a directed verdict and in joining with the defendant in the submission of the case to the court for decision on the defendant's like motion, the plaintiff particularly affirmed, as the Supreme Court said in Beuttell v. Magone, that "there was (in the case) no disputed question of fact which could operate to deflect or control the question of law" as to legal demand and default. The plaintiff said in effect, the evidence which constitutes the record shows the true situation, and on that evidence it bases its motion

for a directed verdict. The defendant by its like motion agreed. The case, as made, was then submitted both as to facts and law to the court.

The record contains evidence that sustains the findings of fact by the trial court (by which "the parties * * * are concluded") and that supports the resulting instruction of law which we find correct.

The judgment is affirmed.