**UNITED STATES FIDELITY & GUARANTY CO. et al. v. STANDARD ACC. INS. CO.**

**No. 3812.**

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

George Moore Brady, of Baltimore, Md. (Alfred S. Barnard, of Asheville, N. C., and Maloy, Brady & Yost, of Baltimore, Md., on the brief), for appellants.

Robert R. Williams, of Asheville, N. C., for appellee.

Before PARKER and SOPER, Circuit Judges, and McCLINTIC, District Judge.

SOPER, Circuit Judge.

The bill of complaint in this case was filed by the appellants to obtain a decree to set aside the cancellation of a depository bond in the sum of $350,000 issued by the Standard Accident Insurance Company on December 19, 1929, and also to recover from the surety the face amount of the bond. The Federal Mortgage Company, the obligee in the bond, was in the business of lending money on mortgages, and of selling mortgage bonds secured in part by the mortgages as collateral. In the course of this business, it had previously executed and delivered to the Central Bank & Trust Company of Asheville, N. C., as trustee, certain indentures, whereby the mortgage company deposited and pledged with the trustee certain securities and cash to secure the payment of several issues of mortgage bonds which it had sold to the public. In addition, it had deposited with the trustee the guarantee of the United States Fidelity & Guaranty Company, that the moneys loaned by the mortgage company on mortgages would be repaid to it in accordance with the terms thereof.

The Baltimore Trust Company of Baltimore, Md., had from time to time purchased the bonds of the mortgage company, and marketed them. In December, 1929, it declined to make additional purchases unless the money deposited by the mortgage company in the Central Bank & Trust Company, pursuant to the terms of the trust indentures, should be secured by depository bonds. Accordingly, the surety bond in suit was executed and delivered by the bank as principal, and the Standard Accident Insurance Company, as surety, to the mortgage company. The condition of the bond was that if the bank should, during the term of the bond, pay to the persons entitled thereto, pursuant to the terms of the indentures, all moneys which the bank should, under the terms of the indentures, be required to pay, then the obligation should be void; otherwise, of full force and effect. The term of the bond began on December 26, 1929, and ended on the effective date of cancellation; and it was provided that the bond should be deemed canceled at the close of business upon the effective date set forth in a written notice served by the surety upon the mortgage company and upon the United States Fidelity & Guaranty Company, such date to be not less than thirty days from such service. In case of cancellation, the unearned premium was to be returned upon demand. It was also provided that the bond should be void at the end of the term, unless, prior thereto, the bank should have suspended payment or refused to pay as aforesaid.

On June 4, 1930, the surety executed a notice of cancellation effective forty-five days from its date, and served the notice on the mortgage company on June 5, 1930, and on the United States Fidelity & Guaranty Company on June 6, 1930, so that the effective date of cancellation was July 19, 1930. The unearned premium was returned by the surety and accepted by the bank. During the term of the bond, and thereafter until

November 19, 1930, the bank remained open and continued to do business in the customary manner, and paid all moneys mentioned in the bond which it was required to pay; and throughout this period, both before and after the receipt of the notice of cancellation, the mortgage company continued to make deposits in the bank and to draw checks thereon in the usual course of business. During the same period, the bank made new loans to other persons of large sums of money. On the last-mentioned date, the bank closed its doors, and shortly thereafter was placed in the hands of receivers. The amount on deposit in the bank to the credit of the mortgage company under the indentures, during the period beginning June 4, 1930, and ending with the closing of the bank, exceeded $800,000; and it seems certain that no part thereof will be repaid in the liquidation of the assets of the bank now in progress.

Upon these facts, the District Judge dismissed the bill of complaint, holding that the surety had the right to cancel the bond by giving the specified notice; that such a notice was in fact given; and that during the term of the bond there had been no breach of the condition. The complainants concede that the surety is not liable for events subsequent to the effective date of cancellation, but contend that the cancellation was void with respect to any loss growing out of antecedent circumstances. The evidence indicates that on and after June 4, 1930, when the notice of cancellation was executed, the bank was insolvent and that it was the knowledge or at least the possession of reasonable grounds of belief that this condition existed that led the surety to cancel the instrument. The complainants therefore invoke the general rule that the cancellation of a policy of insurance looks to the future and not to the past, and that a right of cancellation, although provided in a policy, may not be exercised by the insured so as to affect its liability for losses that have already occurred. See Black on Rescission and Cancellation (1916 Ed.) § 480; Cooley's Briefs on Insurance, §§ 2789, 2790, p. 4578 (2d Ed.) Vol. 5; Couch Enc. of Ins. Law, §§ 1443, 1444. Duncan v. New York Mutual Ins. Co., 138 N. Y. 88, 33 N. E. 730, 20 L. R. A. 386.

This rule, however, is of no avail to the complainants in this case, for there had been no failure on the part of the bank, during the term of the bond, to make payment of the moneys on deposit to the persons entitled thereto under the indentures; and hence no breach of the bond giving rise to liability on the part of the surety before the cancellation became effective. In similar situations involving depository bonds, it has been held, we think correctly, that no liability on the part of the surety ensues. Montana Life Ins. Co. v. American Surety Co. (C. C. A.) 8 F.(2d) 801; Bunker v. United States Fidelity & Guaranty Co. (C. C. A.) 72 F.(2d) 899; Pennsylvania Slovak R. & G. C. Union v. American S. Co. (C. C. A.) 71 F.(2d) 537, 538; Washington v. Trust Co., 205 N. C. 382, 385, 171 S. E. 438; U. S. F. & G. Co. v. American Bonding Co., 31 Okl. 669, 122 P. 142.

If the bank was in fact unable or unwilling, during the life of the bond, to comply with demands for the payment of the funds on deposit it would have been an easy matter to have established such a default during the forty-five days remaining, after notice of cancellation was given, by making demand upon the bank for payment; and thereupon the liability of the surety would have become fixed. But the interested parties refrained from withdrawing their deposits, doubtless because they feared to precipitate the closing of the bank, which ultimately proved to be unavoidable; and this failure on their part precludes the charge that they now make that it is inequitable to allow the surety to escape.

To avoid this situation, the complainants set up the further contention that the obligees in the bond had neither the right nor the duty to demand payment from the bank of the funds in its custody, and had they done so, it would have been the duty of the bank to have refused. We are told that although the proceeds of the sale of the bonds, pending investment, were deposited in the bank pursuant to the trust indentures for the security and protection of the purchasers of the bonds, nevertheless these moneys belonged to the mortgage company in its individual capacity, and not to the mortgage company, as obligee under the bond; and hence it had no power in that capacity to make demand upon the bank. It is difficult to follow this line of argument for it seems to run contrary to the very purpose of the surety bond to protect the investors, in whose interest, it is obvious, the obligees in the bond were expected to act. The bond not only recited that the deposits were made for the security of the mortgage bonds, but named the mortgage company as obligee "for itself and as trustee for the holders of

the bonds," and expressly provided that in case of loss, the surety would make payment to the mortgage company and the United States Fidelity & Guaranty Company "for themselves and as trustees, for the use and benefit of the holders of the bonds."

Moreover, the trust indentures expressly provided that the mortgage company might withdraw from the bank, as trustee, any of the cash on deposit upon the substitution, in lieu thereof, of mortgage notes, coupon bonds, or United States government bonds, not less in principal amount. Clearly a duty to safeguard the cash deposit was imposed upon the mortgage company and the means to perform it was at hand; for funds withdrawn could have been used to secure the simultaneous deposit of approved securities in strict accordance with the obligations of the parties. Indeed the record specifically shows that on July 17, 1930, before the bond expired, the Baltimore Trust Company offered the mortgage company United States Treasury certificates in the amount of $350,-000, to be used to replace an equivalent sum in cash on deposit with the bank; but the mortgage company declined the offer. On numerous occasions during the last forty-five days there were sufficient funds in the bank to meet a demand of $350,000, the amount of the bond, and we have no means of knowing what response to a demand the bank would have made. Nor can we now ascertain, looking at the matter from the standpoint of the surety what steps it might have taken to safeguard its interests or to avoid or minimize the loss if a demand upon the bank had been made and refused before the date of cancellation. Hence, we are forced to conclude that the deliberate and intentional failure of the mortgage company to establish a default during the effective life of the bond puts an end to its case.

Affirmed.