**Christine Boyd, Appellant, v. Aetna Life Insurance Company, Appellee.**

Opinion filed May 31, 1941.

PYLE & McCALLISTER, of Carmi, for appellant.

ROY C. MARTIN, of Benton, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This suit grows out of the cancellation and surrender of a life insurance policy issued by the Aetna Life Insurance Company, appellee (hereinafter designated as defendant) on the life of one Jimmie Boyd, who, at the time the policy was issued, was the husband of Christine Boyd, appellant (hereinafter designated as plaintiff). The policy insured against permanent total disability at the rate of $50 per month during the life of the insured, beginning six months after the beginning of such permanent total disability, together with abatement of premiums and $5,000 to be paid in the event of death, with no deduction from the face of the policy on account of payments made under the total disability clause. Plaintiff was designated as beneficiary, both for the total disability benefits and the death benefit.

After the policy had been in force for a number of years, plaintiff and her husband separated. Plaintiff continued to live in Carmi, Illinois, but her husband left there and traveled as advance agent for shows that were traveling about the country, so that it was impossible for plaintiff to keep informed as to his whereabouts or his state of health.

Following their separation plaintiff paid the premiums on the insurance policy, up until about the month of August 1938, when, owing to her financial circumstances, she felt that she could no longer afford to pay the premiums and notified the insurance company that she desired to surrender the policy and receive its cash surrender value. A loan had previously been made on this policy, which, with accrued interest, amounted to the sum of $1,039, so that when plaintiff surrendered the policy she received but $4.19 in money, that being the balance of the cash surrender value above the loan and interest.

Shortly after the policy had been surrendered and canceled, plaintiff learned the insured had been permanently and totally disabled more than six months before the surrender of said policy. Neither plaintiff nor defendant knew of the physical condition of the insured at the time the policy was surrendered. Upon learning of the permanent total disability of the insured, plaintiff requested the reinstatement of the insurance policy she had surrendered, and the payment of the disability benefits provided therein. Afterwards, on April 8, 1939, the insured, Jimmie Boyd died and plaintiff then requested of defendant the payment of the death benefit, in addition to the disability benefits, claimed to have previously accrued. This was not paid, whereupon suit was instituted.

The amended complaint filed by plaintiff, set forth in substance the above facts, and prayed that defendant be required to produce the surrendered policy in court; that an accounting be had, and that defendant

be required to pay plaintiff whatever sum might be found to be due her upon such accounting. Defendant filed a motion to dismiss the amended complaint which was allowed by the court. Plaintiff elected to stand upon her amended complaint, whereupon the court dismissed said cause for want of equity and rendered judgment against plaintiff for costs, from which action of the court, plaintiff prosecutes her appeal to this court.

Plaintiff alleges as error the action of the court in dismissing the case for want of equity, upon motion of defendant, and it is argued in her behalf that equity has jurisdiction to relieve against the consequences of a mutual mistake of fact and the cancellation or rescission of the insurance policy in question was made under such mutual mistake of fact.

It is defendant's earnest contention that at the time plaintiff decided to surrender the policy and asked for the cash surrender value, she knew that she did not know the condition of health of her husband, the insured. It is stressed that there was no unconscious ignorance on the part of plaintiff as to the health of insured, so it is claimed that the allegations of the amended complaint failed to show any mistake of fact in the legal sense upon her part; that notwithstanding her conscious want of ignorance of the condition of health of her husband she had elected to surrender the policy in question and take the cash surrender value thereof, in lieu of paying any further premiums on the policy and by such action waived any rights she had under the policy of insurance.

There has been cited, and we have found no case in Illinois, directly in point. The cases of *Hoops v. Fitzgerald*, 204 Ill. 325, and *Moore v. Shook*, 276 Ill. 47, cited by counsel for plaintiff, come nearest perhaps, but in the final analysis they merely enunciate the fundamental principle, that a case of a mutual mistake of fact as to a material matter affecting the substance

of a transaction affords grounds for an application by either party for a rescission. Other Illinois cases support the jurisdiction of equity to relieve against the consequences of a mistake of fact. *Nelson v. Pederson,* 305 Ill. 606, 610; *Bivins v. Kerr,* 268 Ill. 164; *Munnis v. Northern Hotel Co.,* 237 Ill. App. 50; *Morgan v. Owens,* 228 Ill. 598; *Winkelman v. Erwin,* 333 Ill. 636; *Purvines v. Harrison,* 151 Ill. 219.

Counsel for defendant seem to particularly stress the case of *Kowalke v. Milwaukee Electric Railway & Light Co.,* 103 Wis. 472, 79 N. W. 762, 763. But the distinction between that case and the instant case, we believe is quite apparent. In that case, plaintiff having been injured in a street car accident, there was a question as to her being pregnant, and release was executed by her upon the theory that she was not pregnant. Thereafter she had a miscarriage, which was claimed to be the result of the accident complained of. She then brought suit against the company, which, of course, sounded in tort. It was her theory that there was a mutual mistake in the effecting of the compromise. The trial court gave her judgment, disregarding the agreement of settlement.

In reversing the judgment of the trial court and holding that the compromise entered into was binding upon the plaintiff, the Supreme Court of Wisconsin held that the question of her pregnancy was a collateral one, one merely calculated to enhance the damages. There the court said, "In a case of doubt like this, if the doubtful fact is material, parties may compromise and include the uncertainty among those covered by the settlement; they may refuse to settle until the uncertainty is removed, or they may settle everything else and expressly omit therefrom the specified contingency."

In the instant case, the question of the state of health of insured was not a collateral matter, nor a matter calculated to merely enhance the damages. It was not

a compromise, comparable to the case of parties entering into a contract based upon uncertain or contingent events, purposely as a compromise of some doubtful claim arising from them, in which case, in the absence of bad faith, no rescission can be had, though the facts turn out differently from the expectation of both parties. In such agreements the parties are presumed to calculate the chances and to assume the risks. Such was the underlying principle of the *Kowalke* case, and so may be differentiated from the instant case.

The Wisconsin case is further distinguished from the instant case by reason of the fact that in the former case, the plaintiff had merely an action based upon tort, the amount of damages that she might recover being uncertain, at the time when she entered into the compromise settlement. In the case at bar, upon the happening of certain contingencies, the plaintiff was entitled to a definite amount of money, under the terms of the contract of insurance. We find no true basis for comparison between the two cases.

We believe that the case of *Duncan v. New York Mut. Ins. Co.*, 138 N. Y. 88, 33 N. E. 730, 20 L. R. A. 386 is very much in point. In that case defendant issued a policy of insurance for $5,000 upon a vessel for one year from August 8, 1888. The policy contained a provision that defendant would "return pro rata premium for every thirty days of unexpired term if the policy be cancelled upon arrival." On November 22, the vessel sailed on a voyage, the ordinary length of which was seven days. At the request of plaintiff, then agent of the owner of the vessel, the policy was canceled at and from December third, and the unearned premium, $233.33, returned. At that time neither party had heard from the vessel since it sailed. Plaintiff supposed it had arrived. The vessel never reached her port of destination, but was lost prior to December third. There, the court held that the can-

cellation looked to the future, not the past, and if binding, it did not absolve defendant from liability already incurred; that as at the time of the cancellation an absolute obligation existed to pay the amount of the policy, it was not discharged by the cancellation and payment made; also that as the cancellation was made under a mistake of fact, it could be rescinded if necessary. The court said, "The cancellation of the policy looked to the future and not to the past. It was the *pro rata* unearned premium which was returned. The parties did not bargain for the entire destruction of the policy, as the defendant kept the premium for the first four months. That was its indemnity for the risk it took during that time, and the policy was canceled only for the remaining eight months. The cancellation was not intended to reach back and absolve the defendant from any liability which it had already incurred. If, therefore, we assume, as claimed by the defendant, that the cancellation was valid and binding upon both parties, we do not think that it exempted the defendant from liability for the loss which occurred during the four months when the policy was in force. . . . The fact that the discharge was given by mistake cannot give it greater effect, or place the defendant in a better position than it would occupy if the discharge had been properly given with knowledge of all the facts. The plaintiff could have recovered the balance of $5,000 upon either of these two grounds in an action at law, without setting aside the cancellation written upon the policy. . . . So it is entirely clear that the cancellation was made under a mistake of fact. It was at least made under a mistake of fact by the plaintiff, and, therefore, upon the return of the money paid to him he was entitled, under familiar principles of law, to have the cancellation rescinded."

The case of *Riegel v. American Life Ins. Co.*, 153 Pa. 134, 19 L. R. A. 166 is another case that seems to

be very much in point. In that case a creditor who held a policy for $6,000, on the life of her debtor, whose whereabouts was unknown, finding it difficult to pay the premium, made an arrangement with the insurance company, under which the policy was surrendered. At the time of the transaction both parties acted on the supposition, that the assured was alive, but as a matter of fact, he had been dead for ten days. The court held that the contract was not in the nature of a compromise of a doubtful claim, but an agreement made under the influence of a mutual mistake of fact and that plaintiff was entitled to have the original policy reinstated as of the date of its surrender. The court there said: ''The case presented on these facts was that of a contract entered into under the influence of a mutual mistake. . . . The mistake was in relation to the fact of Leisenring's, (the insured) death. Both parties evidently supposed and acted on the supposition that he was alive, and that the annual premiums upon his policy which had become burdensome to Mrs. Riegel must be continued indefinitely, until his death should take place. . . . This was a contract made while in ignorance of Leisenring's death. . . At the time she made it she was already relieved from the burdensome premiums, and the entire amount was honestly due her from the Company. These facts seem to us to present a clear and strong case of equitable relief. So strong, indeed, that a mere statement of them is the only argument necessary for its support. The duty of a chancellor to relieve in cases of mutual mistake is so well settled that no citation of authorities can be needed.''

The decisive and practically sole question for the consideration of this court, is whether the facts alleged in the amended complaint, set forth a sufficient mistake of fact, in the legal acceptation of the term, as to justify the intervention of a court of equity, and relieve against the consequences of that alleged mis-

take of fact, in the entering into the contract of rescission.

Mistake of fact has been defined to be a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in an unconscious ignorance or forgetfulness of a fact past or present material to the contract, or belief in the present existence of a thing material to the contract which does not exist, or in the past existence of a thing which has not existed. *Purvines v. Harrison*, 151 Ill. 219, 224. 2 Pomeroy's Equity Jur., Sec. 839. It has also been defined as that which gives rise to a right of recovery, existing either when some fact which really exists is unknown or when some fact is supposed to exist, which really does not exist. *In re Welton's Estate*, 141 Misc. 674, 253 N. Y. S. 128, 144.

It is fundamental, that for the purposes of this case, the material averments of fact contained in the amended complaint must be taken as true, the motion filed against it, being in the nature of a demurrer. The allegation of the amended complaint is that, "plaintiff . . . presumed said Jimmie Boyd to still be in good health," and subsequently, it is alleged that "both plaintiff and defendant were ignorant of the true physical condition of the said Jimmie Boyd." It would be wholly unreasonable and unwarranted to hold that the parties treated upon the basis that the fact which was the subject of their agreement was doubtful or that the contract of rescission was made in view of doubtful facts. It is not contended that plaintiff had any claim at the time of cancellation or supposed that she had one. There was in no sense a compromise. As a matter of fact, at the time of cancellation plaintiff had a perfectly valid claim, but she and the company were both at that time, according to the allegations of the amended complaint, ignorant of the fact that there was a claim in existence, due to the total permanent disability of insured. The sup-

posed element of doubt as to the health of Boyd never entered into the contemplation of either party, nor did it form any part of the consideration for the cancellation and surrender of the policy. It would be quite natural that they would assume as they evidently did, that the insured was in good health. As matter of fact such is the express allegation of the amended complaint.

In the *Kowalke* case, *supra,* the court at page 477 of the opinion said, "Passing the requirement that the fact as to which mistake is made must be either past or present,—for it is obvious that the coming into existence of any future fact must at the time of contracting have been understood to rest in conjecture, and the contingency thereof to have been assumed by both parties,—another essential element of the definition is that the fact involved in the mistake must have been as to a material part of the contract, or, as better expressed by Mr. Beach (Mod. Eq. Jur. §§ 52, 53), an intrinsic fact; that is, not merely material in the sense that it might have had weight if known, but that its existence or nonexistence was intrinsic to the transaction,—one of the things actually contracted about."

In the instant case, the insured's state of health was not merely incidental, nor was it a matter that would merely enhance the amount of damages. The subject matter of the mistake was intrinsic to the transaction. As set forth in plaintiff's amended complaint, "if she had known the true facts as to said Jimmie Boyd's total permanent disability . . . she would not have surrendered same (the policy) to the defendant." This policy was in full force and effect at the time of total permanent disability. Upon that contingency coming to pass the liability of defendant was fixed. The cancellation was not intended to reach back and absolve defendant from any liability which it had already incurred. Even as in the *Duncan* case the

parties believed the vessel insured was still in existence; and as in the *Riegel* case, the parties believed the insured alive, in the instant case both parties believed Jimmie Boyd in good health, and contracted with reference to that supposed state of facts. We are of the opinion, therefore, that the facts alleged show ground for equitable relief, and that the court erred in dismissing the amended complaint for want of equity.

The order and judgment of the circuit court will be reversed and the cause remanded with directions to overrule the motion to dismiss, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded with directions.*