## BENWARD v. AUTOMOBILE INS. CO.

District Court, S. D., New York.

March 6, 1945.

Hill, Rivkins & Middleton, of New York City (Gregory S. Rivkins and Robert J. Andrews, both of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne, of New York City, of counsel), for defendant.

BRIGHT, District Judge.

Plaintiff, an exporter of merchandise from New York to Central and South American countries, brings this action to recover $13,574.10 and interest, under three separate certificates of insurance, two issued by defendant on April 20, 1942, and the third on May 12, 1942, insuring plaintiff against all risks of loss or damage from external causes, including perils of war, of three shipments of merchandise at and from the interior of this country via New Orleans to Guatemala City, Guatemala. These three shipments were laden on board the S/S Baja California on July 14, 1942, which, while proceeding on her voyage, was sunk on July 18, 1942, as a result of enemy action, and the insured's cargo lost.

The facts are stipulated. The Gallie Corporation was engaged in the business of freight forwarding and cargo insurance broker, and for some time before the dates and transactions in question, was the broker for plaintiff. It was the holder of two policies issued by defendant, both of which were in force at the time of the loss, one an open marine cargo policy, dated February 15, 1932, which insured shipments of merchandise against loss by marine perils, and the second, dated November 9, 1938, an open war cargo policy, which insured against loss by war perils on designated shipments.

Twice on April 20, 1942, and again on May 12, 1942, Gallie delivered to defendant on behalf of plaintiff, as it had done on previous occasions, and defendant accepted as provisional declarations of insurance, three certificates which certified that defendant insured the three shipments mentioned under the open marine policy "under deck of the S/S via U. F. Co.", but the date of the bill of lading was left blank. Under the practice, defendant was to be advised of the name of the vessel as soon as known to plaintiff or Gallie, as well as the sailing date of the vessel. By reason of the secrecy at that time imposed by naval war time regulations on the sailing of vessels, the practice then existing was for defendant to accept the bill of lading date in lieu of the date of sailing. On July 20, 1942, Gallie informed defendant that the vessel nominated with respect to the three shipments was the Baja California, and that the date of issue of the bill of lading covering each shipment was July 14, 1942. Thereupon, defendant attached a printed war risk endorsement to each of the insurance certificates mentioned, wrote in the name of the vessel, duly countersigned each of them, and delivered the three to Gallie. When so delivered on July 20, 1942, and accepted by Gallie, the documents originally issued became certificates of insurance. The certificates then insured the three shipments against destruction or damage by men of war and other warlike operations, and acts of kings, princes and peoples in the prosecution of hostilities.

In July, 1942, enemy submarines were actively operating in the Gulf of Mexico and in the waters through which the Baja California would pass on her voyage, and she was the victim of such enemy action on July 18, 1942, as stated.

Previously, however, and on May 2, 1942, the plaintiff had instructed Gallie, with reference to war risk insurance, that he wanted all of such insurance on his shipments to be taken out with the Government, as there would be a considerable saving to him in rates. On July 20, 1942, when Gallie informed the plaintiff that he had procured war risk insurance upon the three shipments mentioned, it was advised that it was contrary to the plaintiff's instructions, and later in that day, Gallie applied to the Insurance Division of the War Shipping Administration for war risk insurance upon each of the three shipments described covering the same voyage, and obtained from that Administration, by telegraph, binders of war risk insurance. On July 21, 1942, policies covering these three shipments were issued to plaintiff by the War Shipping Administration and plaintiff was so notified.

On July 24, 1942, without knowledge on the part of any of the parties to this action as to whether or not shipments had been laden aboard the Baja California, and whether or not she had sailed, and prior to any known or reported loss of the vessel, Gallie, on plaintiff's behalf, returned to defendant the three certificates of insurance, informed defendant that war risk insurance was not wanted on the three ship-

ments, and instructed defendant to delete war risk coverage from the certificates. Defendant thereupon physically removed the printed war risk endorsement from each certificate, wrote across the face of each the words "excluding war", and struck out from the upper left hand corner of each certificate the symbols "& W". At the same time defendant stamped upon the face of each certificate the following:

"War Risk Policy No. 5442

"At the request of the Assured, and by special agreement and in consideration of the waiving of any premium this shipment is hereby excluded from and is not covered under this policy without regard to whether risk may have attached or loss occurred or may hereafter occur."

The certificates of insurance as thus changed were redelivered to Gallie on July 24, 1942, accepted by it, and on July 25, 1942, were delivered to the plaintiff along with three documents indicating that war risk insurance on the three shipments had been bound with the War Shipping Administration. The three certificates of insurance so changed were accepted by the plaintiff without question.

On August 3, 1942, it first became known to all concerned that the Baja California, while at sea, had become a total loss through enemy action on July 18, 1942.

Plaintiff filed his claim for the loss with the War Shipping Administration, which was rejected on the grounds that the policies were issued when the vessel was not in good safety in port.

On December 8, 1942, Gallie, on behalf of plaintiff, filed with the defendant proofs of loss and made claim upon the defendant for the sum now sought, offering to pay the premium previously waived. On the same day defendant returned the proofs of loss to Gallie disclaiming all liability.

The war policy mentioned contained the following provisions: "This insurance may be cancelled by either party upon forty-eight hours written or telegraphic notice to the other party, but such cancellation shall not affect any shipment which has been loaded on the overseas Vessel prior to the effective date of such notice."

It is plaintiff's contention that on July 24, 1942, when the war risk insurance was eliminated, (1) defendant's liability to the plaintiff had already vested and there was nothing to cancel; (2) that, in any event, there was an inadequate consideration for

the cancellation of a liability of $13,574.10 by a waiver of premiums of $2,036.11; (3) that the cancellation was nugatory, in that under the terms of the policy last quoted, such cancellation would not affect any shipment loaded prior to the effective date of notice of cancellation; (4) that the open war policy provided that there shall be "automatic War Risk coverage with respect to all shipments applicable to the policy", which contemplated that whenever there was marine insurance on plaintiff's goods, as there was here, such goods would likewise be insured against war risks; and (5) the certificates of insurance should be reformed, because of a mutual mistake of fact, so as to restore to them the war risk coverage previously thereon.

The important question which seems the first to be raised is whether or not there was any consideration for the contract by which the shipments were excluded from the war risk policy. There is no question of the capacity of the parties to contract. And it is clear that those who make contracts are competent to unmake them, the discharge of one party from the obligation to perform being sufficient consideration for the discharge of the other. Ætna Life Insurance Co. v. Dodd, 8 Cir., 103 F.2d 793–795, certiorari denied 308 U.S. 573, 60 S.Ct. 87, 84 L.Ed. 480. Where there are mutual promises, the promise of one is a good consideration for the promise of the other. Savage Arms Corp. v. United States, 266 U.S. 217–220, 45 S.Ct. 30, 69 L.Ed. 253; United States v. Bethlehem Steel Corp., 315 U.S. 289, 299, 62 S.Ct. 581, 86 L.Ed. 855; Fidelity & Deposit Co. v. Wheeler, 8 Cir., 34 F.2d 892–895; Union Central Life Insurance Co. v. Imsland, 8 Cir., 91 F.2d 365–370; Coleman v. Eyre, 45 N.Y. 38; Tradesmen's Nat. Bank v. Curtis, 167 N.Y. 194–197, 60 N.E. 429, 52 L.R.A. 430. Generally, gain or advantage to the promisor, or loss or disadvantage to the promisee, or the relative values of a promise and the consideration for it, do not affect the sufficiency of consideration. Restatement, Contracts, § 81. The words of Judge Cardozo in Walton Water Co. v. Village of Walton, 238 N.Y. 46–49–51, 143 N.E. 786, 788, may well be applied here—"We think the argument against this contract is aimed at the adequacy of the consideration rather than at its existence. With adequacy we are not concerned. 1 Williston Contracts, §§ 115, 137; Anson Contracts, (Corbin's edition)

§ 123. * * * Courts are slow to say that promises, bearing upon their face the outward or formal tokens of a contract with mutual obligations, shall be set at naught on the assumption that the parties were oblivious of the advantages and burdens of their reciprocal engagements. 1 Williston, Contracts, § 112, p. 233."

Substantially the same text may now be found in Williston, Contracts, Revised Ed., Vol. 1, §§ 112, 115, p. 359; Anson's Law of Contracts, 18th Ed., p. 85. Even though the condition in a promise relates to an unknown fact which is already determined, so that if the parties knew the truth it would be apparent that the promisor really bound himself for nothing, the consideration is sufficient. Williston Contracts, Revised Ed., Vol. 1, § 103(f), p. 346. Outlet Embroidery Co. v. Derwent Mills, 254 N.Y. 179, 172 N.E. 462, 70 A.L.R. 1440. The rule that the law will not enter into an inquiry as to the adequacy of the consideration, is almost as old as the law of the consideration itself, and anything which fulfills the requirement of the consideration will support a promise, whatever may be the comparative value of the consideration and of the thing promised. Williston, Contracts, Rev.Ed., Vol. 1, § 115, p. 389; Vol. 3, § 663, p. 1906; Youssoupoff v. Widener, 246 N.Y. 174–188, 158 N.E. 64.

This was not the compromise of a doubtful claim. It was not the compromise of anything. There was clearly the making of a new contract, not the settlement of any liability to take the place of one that had been unauthorized and repudiated. If the matching of the value of that forgiven or surrendered by the parties is of any concern at all, it is obvious that what was surrendered was a present and fixed liability for a premium and the possibility of a recovery that might or might not materialize. It was not the forgiving of the premium for a similar surrender of the value of the goods. The amount of the premium was known; the risk of loss was conditional. By hindsight, we cannot be furnished with a yardstick measuring the worth of the consideration. There was obviously no matching of values. The situation must be considered in the light of what was then obvious, not what afterwards transpired.

I am satisfied that the contract of July 24, 1942 stamped upon the three certificates was based upon a legal and sufficient consideration.

Under the circumstances, the terms of the policy relating to cancellation and automatic war risk coverage are not controlling. If the contract mentioned properly excluded the war risk coverage, such exclusion was equally applicable to these two clauses. And, in any event, plaintiff having requested such exclusion, he cannot now say that defendant's compliance was nugatory.

There remains but the fifth contention, that the contract should be reformed. Reformation is sought on the basis of mutual mistake. No fraud is alleged or proven. The mutual mistake asserted is that, at the time, neither party knew that the Baja California and the goods were a total loss and no longer in existence.

Mistake on the part of one party is not ground for a reformation. Hearne v. Marine Insurance Co., 87 U.S. 488–491, 20 Wall. 488–491, 22 L.Ed. 395; Ruston Drilling Co. v. United States F. & G. Co., 8 Cir., 81 F.2d 943–946. Where the parties treat on the basis that the fact which is the subject of the agreement is doubtful and the consequent risk each is to encounter is taken into consideration in the stipulations assented to, the contract will be valid notwithstanding any mistake of one of the parties. 17 C.J.S., Contracts, § 144, subsec. a, page 498. Denver & S. L. R. Co. v. Moffat Tunnel Improvement Dist., D.C., 35 F.2d 365–372, modified on other grounds 10 Cir., 45 F.2d 715, certiorari denied 283 U. S. 837, 51 S.Ct. 485, 75 L.Ed. 1448; Russell v. Shell Petroleum Corp., 10 Cir., 66 F.2d 864–867. Where there is an absolute unconditional contract concerning a matter about which there is or may be some doubt, and it appears that the existence of the thing was an implied condition, but that the parties intended to take the risk, then it is no answer to the enforcement of the agreement that the thing did not actually exist. 17 C.J.S., Contracts, § 144, subsec. c, page 499.

Here the parties did not know whether the goods had been actually laden on the ship, or whether the ship had sailed, or whether she was lost. They did know that the plaintiff did not want that particular war risk insurance and had not authorized it. They certainly could contract validly even though they were ignorant of the loss at the time the contract was made. Insurance Company v. Folsom, 85 U.S. 237–251, 18 Wall. 237–251, 21 L.Ed. 827. And they did so contract in words which

are plain and specific. Plaintiff, carrying out his idea that the insurance should have been placed with the War Shipping Administration, requested the exclusion from the defendant's policy of the three shipments. The shipments were excluded, and it was expressly understood and written in the agreement that such exclusion was "without regard to whether risk may have attached or loss occurred or may hereafter occur". The possibility of the very loss that occurred was the subject of the agreement. Obviously, the plaintiff took whatever risk there was of a loss having occurred and made no express reservation to protect himself against such a loss. Surely plaintiff could have cancelled, reserving any claim for any accrued loss, of which, if he desired to avail himself, he should have done but which he did not do. Soper v. Atlantic Mutual F. & M. Ins. Co., 120 Mass. 267. He did not want the insurance because he had never authorized it. Its very placing was contrary to his authorization and instructions and he repudiated it. And the defendant, conforming to his request and wishes, cancelled his then liability for the premium. I cannot see how there was any mistake of fact. Both parties got exactly what they bargained for, and they made their bargain knowing that neither had any information as to whether the goods were laden, whether the ship had sailed, or whether she was safe or lost.

Plaintiff cites Duncan v. New York M. Insurance Co., 138 N.Y. 88–92, 33 N.E. 730, 20 L.R.A. 386, and Steamship Samana Co. v. Hall, D.C., 55 F. 663. I do not think that these cases, which arise out of the same loss, are in point. The insurance was paid for and the policies were in force by agreement up to a date subsequent to the loss. Here, the risk was excluded from the very beginning. In Magaliff v. New York Life Insurance Co., 247 App.Div. 810, 285 N.Y.S. 303, affirmed without opinion 272 N.Y. 521, 4 N.E.2d 428, no provision was made that accrued benefits should be disregarded. And Seidman v. New York Life Insurance Co., 162 Misc. 560, 296 N.Y.S. 55, affirmed without opinion in 253 App. Div. 804, 2 N.Y.S.2d 634, and 279 N.Y. 620, 17 N.E.2d 680, was of a similar character. The same situation existed in Riegel v. American Life Insurance Co., 153 Pa. 174, 26 A. 1070, 19 L.R.A. 166. In none of these cases did the cancellation contain the language found in the present one, obviously contemplating and excluding a loss which might previously have occurred.

Here there was express agreement that the exclusion of the shipments from the policy was to be had regardless of whether loss had or might occur.

Accordingly, the complaint will be dismissed upon the merits, with costs. Proposed findings may be submitted by the defendant within ten days, and plaintiff may have five days after the service of them upon his counsel in which to object to any thereof.